EWELL WEBB *vs.* WILLIAM W. FLEMING.

1. A testator's acknowledgment of his signature in the presence of the subscribing witnesses is sufficient, without the signing being done in their presence.

2. It is not necessary that the subscribing witnesses should sign in the presence of each other; it is sufficient if each signs in the presence of the testator.

3. An attempt to manumit a slave avoids that part of a will which relates to that object, but not to the remainder of it.

4. The verdict in this case held to be supported by the evidence.

Caveat to Will, in Early Superior Court. Tried before Judge ALLEN, at April Term, 1860.

Ewell Webb filed his *caveat* to the will of Mark Sanders, on the following grounds:

1. Because said testator did not sign said paper in the presence of all said witnesses, nor either of them.

2d. Because he did not sign said paper purporting to be a will.

3d. Because the witnesses did not sign said paper in presence of each other.

4th. Because said will attempted to manumit or give freedom to a slave, and is therefore void.

5th. Because said will was not the free and voluntary act of said Mark Sanders.

6th. Because undue influence was used in the procurement of said will, and therefore said will is void.

The cause being for trial on the appeal, the following evidence went to the jury :

Thomas T. Smith testified, that he signed the paper produced to him the day of its date or about that time ; went to the house were Sanders was after dark ; he had received a note from Jeff. Hutchens, requesting him to go there, and which had caused him to go ; was met at the house by Hutchens, who said that they would not go into the house until Mr. Taylor and his family had retired for the night; they were in a room up-stairs ; when they went into the house, about 9 o'clock, Sanders was in bed, with his face to the wall, quite feeble ; no person present but Hutchens, Sanders and witness ; Hutchens produced the will ; he first saw it in Hutchens' hand or possession ; Hutchens approached the bed and said to Sanders : " Mark, Tom is here to attend to that business ;" Sanders said : " Yes, this is my will ; it is written as I want it ; I want you to witness it." He then subscribed the paper in the presence of Sanders ; Sanders did not sign or say he had signed it in witnesses' presence ; will was not read either by Hutchens, Sanders or witness ; he did not know the contents of the will ; witness remained there during the night ; after Hutchens and witness retired from the room of Sanders, Hutchens told witness to say nothing about the fact of the making of the will ; no one must know but the witnesses until Sanders' death ; that Sanders did not want Col. Taylor to know he had made a will ; witness believes the paper to be in the hand-writing of Hutchens ; had known Sanders about three years ; he was a very intemperate man ; he and Hutchens were warm friends—associated together ; Hutchens was a very shrewd, intelligent man, and sustained a good chrracter ; after the

will was signed, Sanders handed it to Hutchens, saying : " Take care of it." Hutchens folded it up and handed it to witness, requesting him to put it in his iron safe, which he did ; Sanders was afflicted with a disease of the bowels ; had been sick a long time ; during his sickness Hutchens stayed with him a great deal—almost continually ; during the latter part of his sickness he had to be lifted out and in his bed ; knew of no relations Sanders had in that part of the county ; thought he was of sound and disposing mind ; saw no one attempt to influence him to make a will , had negroes of his own.

Martin T. Alexander said : He signed the will or paper presented on or about the day of its date ; lived about a mile and a half from where Sanders did ; Sanders lived at Henry Taylor's plantation ; was in no business, but made that his home ; he went there in response to a request of Hutchens ; when he arrived at the house, found Hutchens and Sanders, Hutchens in bed ; soon after, he went into Sanders' room ; Sanders said he wanted witness to sign his will ; Sanders had it in his hand ; witness signed the will in presence of Sanders ; Sanders made his mark ; no one present but Hutchens, Sanders and himself ; will was not read in his presence by Sanders, or any one else ; Sanders had the will in his hand but a minute or so, and did not read it ; after Hutchens and witness had retired from the room, asked Hutchens what was in the will ; Hutchens said it was not customary to tell, and Sanders did not want any one to know it until his death ; witness does not now know the contents of the will, except from what he has heard ; frequently or always found Hutchens there ; Hutchens lived at Howard's Landing, about four miles distant ; he and Sanders were good friends ; Sanders died in the month of July last year ; at the time Sanders signed the will witness thought him of disposing mind and memory ; saw no influence exerted by Hutchens or others to induce him to make the will ; Sanders handed witness the will ; said he had not signed it ; Sanders told witness to write his name, *he* was too nervous to write it, which he did.

William A. McDowell testified : That he went to the house where Sanders was about 11 o'clock in the day ; it was the day the paper presented was dated or about that time ; was sent for to go there, but frequently went in to see how San-

ders was; Hutchens came out of the room where Sanders was in bed; Sanders produced the will or paper; does not know how he got it; and asked witness to sign as a witness; he did so, and gave it back; Huthens told him to say nothing about it, as Sanders did not wish any one to know it until after his death; no one was present when he signed the will but Hutchens, himself, and perhaps Mr. Power; will was not read while he was there by Hutchens or any one else.

B. M. Fryer testified, that he believed Mark Sanders could write his name; had seen him sign a note; had received orders from Sanders; did not know that he wrote them.

John Sermons testified, that he had received an order from Sanders, and when he saw him afterwards, said he had sent it.

The will gave all of testator's property to J. Hutchens and John Power, to be equally divided between them, after payment of his debts; and after selling his boy Henry and with the proceeds purchasing the girl Rose, who was, by Hutchens, his executor, to be freed from service to himself or any other person.

The jury having found in favor of the propounder of the will, counsel for caveator moved for a new trial on the ground, that the verdict was contrary to evidence, contrary to law, and decidedly and strongly against the weight of evidence.

The Court refused the motion, and counsel for caveator excepted.

DOUGLASS & DOUGLASS, for plaintiff in error.

SIMS & STAFFORD, *contra*.

*By the Court*—STEPHENS, J., delivering the opinion.

1. To determine whether or not this verdict is supported by the evidence, the evidence must be applied to the different issues presented by the different grounds of caveat. The first ground is, that the testator did not sign the will in the presence of the witnesses. The evidence is, that he did sign it in the presence of the witness, Martin, and that, by his

Webb *vs.* Fleming.

conduct, he clearly acknowledged his signature in the presence of each of the other two. And that was sufficient.

2. The second ground, that he did not sign the will, is covered by what has just been said on the first ground.

3. The third ground is, that the witnesses did not sign the will in the presence of each other. That was not necessary; it is sufficient if each witness subscribes in the presence of the *testator.*

4. The fourth ground is, that the will attempts to manumit a slave, and is therefore void. The will does provide for the purchase of a slave by the executor, and her manumission afterwards, and the part of the will relating to that object is void; but the remainder is good, as has been frequently held by this Court.

5. The fifth ground is, that the will was not the free and voluntary act of the testator. In support of this ground, it was argued that the will being written by Hutchens, who is a principal legatee, strong proof was necessary to show that the testator knew the contents of the paper, but that the proof on this point was very weak. We think the evidence on that point is satisfactory. The testator, as appears from the evidence, could read and write, and the testimony of Smith is, that when he subscribed as a witness, the testator produced the will to him. He produced the will without getting out of bed, and without assistance from anybody. He must, therefore, have had it in bed with him, actually nursing it. We think it is a fair and satisfactory conclusion that the deep interest which he manifested in the subject, led him to make use of the ample opportunity which he had of knowing the contents.

6. The sixth and last ground is, that undue influence was used in the procurement of the will. There was no evidence at all in support of this ground. We think that all of the issues presented by the caveat are either bad in law, or satisfactorily met by the evidence.

Judgment affirmed.