696 *JAMES B. HUFF, et al., plaintiffs in error, *v.* WARREN C. HUFF, defendant in error.

(Atlanta, January Term, 1871.)

1. WILLS — SIGNATURE OF TESTATOR — CHARGE OF COURT.*—Where the testator signed his will below the attestation clause, and the Court charged the jury that, if it appeared that the will was signed by testator below said clause, and if the jury believed from the evidence that it was so signed by testator, with the intention to sign it as his will, then, in law, it was a good signature of the will:

*Held,* That such charge was correct, under section 2379 of the Code of this State.

2. SAME—SAME—SAME—SUBSCRIBING WITNESSES.—When the testator went to the warehouse of certain parties for the purpose of executing his will, and two of the witnesses were present, and one absent, and, after waiting some time, one of the parties remarked to the testator, as A came in, that he would answer as well, and testator was introduced to A by B, and B remarked at the time that testator wanted him to witness his will, and they all went to a desk and executed the paper; and under these facts, the Court charged the jury, that if they believed from the evidence that one of the witnesses was suggested to testator, and testator assented to such suggestion, such assent was, in law, a request, or equivalent to a request:

*Held,* That such charge by the Court was not error; that the law provides no special formalities about the witnesses to a will; it is sufficient if they attest and subscribe the will in, the presence of testator; the law implies the request in the consummation of the act, and no special request by the testator is necessary.

3. SAME—SAME—SAME—SAME—ATTESTING WITNESS.†— Where a witness to a will was not acquainted with testator before

---

*WILLS—SIGNATURE OF TESTATOR.—In Horton *v.* Murden the court said, "It was admitted that the signature need not necessarily be at the end of the instrument, the Civil Code, § 3599, not requiring that deeds should be subscribed, but only signed. If a conveyance with the name at the beginning or in the body of the instrument, or after the attestation clause (Huff *v.* Huff, 41 Ga. 696), could be treated as signed, the same result would follow where the grantor was an illiterate and obliged to use a mark; because, under the Political Code, § 5, "signature includes mark," and the mark may be placed wherever the ordinary signature could be. Horton *v.* Murden, 117 Ga. 74, 43 S. E. Rep. 786.

†SAME—SAME—ATTESTING WITNESSES.—Section 2414 was codified from section 5 of 29 Charles II, ch. 3, known as the "statute of frauds," in reference to devises of real property (Cobb's Dig. p. 1128, Huff *v.* Huff, 41 Ga. 701), and from an act of January 21, 1852 (Acts of 1851-2, p. 104), which prescribes the wills bequeathing personal property shall be executed as are wills devising real property. The statute of frauds and our own act of 1852 each uses the word "credible," and section 2414 of the Code uses the word "competent," as to the three or more witnesses required to attest a will. These two words are, as here used, synonymous. Hall *v.* Hall, 18 Ga. 40. They mean, in this connection, witnesses who are competent at the time of attestation to testify in a court of justice. Gillis *v.* Gillis, 96 Ga. 3, 23 S. E. Rep. 107.

SAME—SAME—THE OPINION WITNESSES.—"The opinions of subscribing witnesses to a will as to the sanity of the testator are admissible without stating the facts upon which they are founded." Huff *v.* Huff, 41 Ga. 704; Scott *v.* McKee, 105 Ga. 258, 31 S. E. Rep. 183; Potts *v.* House, 6 Ga. 333.

the execution of the will, and the Court was requested to charge the jury, that if the witness knew nothing of the testable capacity of the testator, he was not, in law, an attesting, though a subscribing witness, and the will in that case was void, the Judge replying, "that is the law;" but also added, "I charge you, that if he was introduced to him and looked at him, the law implies he knew whether or not he had testable capacity."

*Held,* That the word attest, in the Code, does not imply relation to the capacity of the testator. Attesting means witnessing, and subscribing, that such witness shall sign. The factum of the execution being the object of such attestation and subscription, the inability of such witness to testify to the mental capacity of the testator, did not render the will void, but only went to the credibility of such witness, in case he was called on to testify the sanity or mental capacity of the testator, and the Court ought to have refused such charge as it is not the law:

4. *Held* again, That the addition of the Judge to the charge under the facts of this case was not material to the issue involved in the trial, and only expressed what is a plain principle of law, that all men are presumed to be sane, and being introduced, and seeing testator could only strengthen the presumption.

697 .    *Wills. Before Judge Johnson. Muscogee Superior Court. May Term, 1870.

Daniel Huff made a paper in the form of a will, by which he gave certain property to his wife during her life, in lieu of dower, certain stock to Warren C. Huff, in trust for two of Warren C.'s children, and the residuum to said Warren C. reciting that he did this because his estate was reduced by the war, and because he had given his other children as much as this residuum. By it Warren C. was nominated executor. The paper was concluded as follows:

"In witness whereof, I have hereunto subscribed my name and affixed my seal, this ........... day of ...........

The foregoing instrument published and declared by Daniel Huff as his last will and testament, and by him signed in the presence of the subscribing witnesses, who at his special instance and request have hereunto subscribed our names as witnesses, in presence of said testator and of each other.

Test:                               Daniel Huff, [L. S.]
John D. Stewart,
W. A. Bedell,

W. Felix Alexander."

Daniel Huff died, and on the 6th of April, 1869, this paper was proven, in common form, as his will. In May, 1869, upon an effort to prove it in solemn form, James B. Huff and others filed their caveat upon the grounds that, when said paper was made Daniel Huff was non compos mentis, or if compos, very weak, and was fraudulently induced by Warren C. to make it, and that it was not a legal will. On the trial the evidene for propounder was as follows:

Bedell testified that he had known testator for a good many years, had dealings with him some time. Witness thinks in the

Spring of 1868, testator came to the warehouse of Gray, Bedell & Hughes, and asked witness to be a witness to his will; testator brought John D. Stewart with him as a witness. *Testator waited some time for Gray, and as Gray did not come, testator became impatient. W. Felix Alexander stepped in the room, when witness said to testator that Alexander would answer the purpose as well as Gray. Testator said he was not acquainted with Alexander. Witness said he would introduce him. Witness called up Alexander and introduced him to testator, and remarked to Alexander that testator wanted him to witness his will, when witness, testator, Alexander and Stewart stepped to the desk, testator signed his name, and the three witnesses signed in the presence of testator and of each other. Witness had many business transactions with testator, considered testator a man of more than ordinary capacity for business, and a man of firmness of purpose. When the will was made testator was an old man, but perfectly competent to transact business or make a will, and testator's intellect appeared to be as clear as ever.

John D. Stewart corroborated all that Bedell had stated, said he had known testator a long time, thought him a man of more than ordinary business capacity; saw no particular giving away of his intellect at the time of making the will. He saw testator sign the will and signed himself as witness, and saw Bedell and Alexander sign as witnesses, all in presence of testator. It was, witness thinks, in the Spring of 1868. He saw Bedell introduce Alexander to testator, heard Bedell say to testator that Alexander would do as well as Gray for a witness; they then all walked to a desk and the will was signed by testator in presence of and witnessed by the three witnesses.

Alexander testified that some time in the Spring of 1868, he stepped into the warehouse of Gray, Bedell & Hughes, when Bedell walked to where testator and Stewart were standing. Bedell introdued witness to testator and stated that testator wanted him (witness) to be a witness to his will. Bedell said this in presence of testator, who bowed his assent. They all then moved to a desk, and testator signed, and the three witnesses signed as witness in presence of testator. Witness had never seen testator before, never saw him *afterwards, did not speak to testator except on introduction, nor testator to witness; did not hear testator speak to any one. Witness did not know that testator was a deaf man until he learned it from others after testator's death. Witness recollects that testator did not request him to witness the will. Witness was an entire stranger to testator. Bedell informed witness as to the nature of the paper. Witness knew nothing whatever of testator, of his capacity or condition; just happened in the warehouse, at the time, for the purpose of buying cotton.

The drawer of the paper testified to the soundness of Daniel

Huff's mind at the time, and said he drew the paper for him as a will, and another witness also testified to the soundness of mind, etc.

Here the propounder closed. The evidence for the caveators was to show that Warren C. had exercised undue influence on Daniel Huff, had received property from him, etc.

Counsel for caveators requested the Court to charge the jury, 1st. That the signature of testator's name under the attesting clause of the paper was not a signing of the will. 2d. That if one of the witnesses knew nothing whatever of the mental condition and testative capacity of the party signing the will, such witness, though a subscribing witness, is not, in law, an attesting witness, and in that case this will would be void. The Court refused to give in charge the first request, but charged the jury that, if the paper was signed by testator below the attesting clause, and was so signed with the intention of signing it as a will, it is a good signature of the will. He told the jury that the second request was the law, but that if such witness was introduced to testator and looked at him, the law implies that the witness knew whether or not testator has testable capacity.

He further charged that if one of the witnesses was suggested to testator as a witness to his will, and testator assented to such suggestion, such assent was, in law, a request, or equivalent to a request.

The jury found for the propounder. Counsel for caveators say that the Court erred in refusing to charge the first *request; in qualifying the second request as he did; and in charging as he did last aforesaid.

Smith & Alexander, Pou & Little for plaintiffs in error. Attestation, etc.: Irwin's Code, sec. 2379; 1 Bou., 139; 2 Ves., 454; 3 Marsh, 146; 3 Bibb, 494. Inference as to capacity: Powell on Dev., 69-71; Roberts on Wills, 134. Attestation means more than subscribing: 1 B. Munroe, 117; 1st Gr. Ev., secs. 272, 691; 6th Ga. R., 836. Place of signature: 1 Williams on Ex's, sec. 68.

H. L. Benning, Ingram & Crawford, for defendant.

LOCHRANE, C. J.

We learn from this record that Warren C. Huff, the executor of one Daniel Huff, propounded his will for probate, in solemn form, in the Court of Ordinary of Muscogee county. James Huff and others filed their caveat, which was appealed to the Superior Court, by consent, where it came on for trial, at the May Term, 1870, and upon the trial, several causes were alleged by caveators against the will, only a part of which it will become our duty to dispose of. The jury found in favor of establishing the will. The first objection was to the signature of Daniel Huff to the will. The will shows that he signed below the attestation clause instead of above

it. The second objection was, that one of the witnesses who signed was suggested to the testator, and did not know him personally before the time of his acting as witness.

1. Counsel for caveators requested the Judge to charge the jury, that the signature below the attestation clause was not a good signature, which the Court refused, and did charge, that if it appeared that the will was signed by testator below said clause, and the jury believed from the evidence that it was so signed by testator, with the intention to sign it as his will, then, in law, it was a good signature of the will. And this is the first ground of error assigned. Our Code, section 2379, speaking of the formalities of the execution of a will, says, it should be in writing, signed by the party making the *same, and by some other person in his presence, and by his express directions, and shall be attested and subscribed in the presence of the testator, by three or more competent witnesses.

By the Act of 1752, (see 25th, George the II.,) being an Act for avoiding and putting an end to certain doubts relating to the attestation of wills, etc., etc., we find the same provision affirmed from 29th, Charles the XI. "All devisees, etc., shall be in writing, and signed by the party so devising the same, or by some other person, in his presence and by his express direction, and shall be attested and subscribed in the presence of said devisor by three or four credible witnesses." The Code only changes the phraseology of a word or two, and with these we have the whole law, directing the manner of executing and attesting wills. They shall be signed by the party.

Now, looking at this will, we find it was signed by the party, and the place of signing after the attestation clause does not change the fact or invalidate the execution. We take the whole instrument and the signature of Daniel Huff in connection therewith, and find that the formalities, as well as the legalities of the execution, have been complied with. He has signed the will as his will, with three witnesses to the fact, who also signed, attesting and subscribing their names. If we go into the most minute details of the law on this subject, we find nothing that contravenes this position. A will written on one side of a sheet, with the signature of the testator and witnesses, held, was a signing at the "foot or end," under the statute: Jermyn v. Hervey, 1 English Law and Equity Reports, 634. A blank of about ten lines was left between the conclusions of a will and the signature of testator and witnesses. The will was held good: 1 English Law and Equity Reports, 594. In Jonele v. Hall, 4 Comstock's New York Reports, 140, although a map referred to in the will, as a part thereof, followed the signatures, it was held a sufficient compliance with the statute of signing at the "end:" 30 Law and Equity, 147. Under law, no place is designated

702     and no attestation clause is prescribed.  A will *signed
        without attestation clause is good:  2 R. I., 88; 3 Brad-
ford N. Y., 355.

A will under section 1611 of the Code of Alabama, which
relates to the signing of the will, and is a substantial tran-
script of 29, Charles XI., held under such section in Arm-
strong v. Armstrong, 29 Alabama, 538.  "Although testator's
name is not written by himself, nor subscribed to the will,
yet, if it be written in the beginning of the will by another,
in his presence, and under his direction, and if it be acknowl-
edged by him to the attesting witnesses," it is good.

No rule has been rigidly laid down on this subject, and we
find, even under the English Statutes, a more technical defi-
nition than our own by specifying the end of the will, that
the rules have been uniformly to hold a substantial compliance
sufficient.  In notes to page 282, Redfield on Wills, Part 1st,
where the will fills two sides of a sheet of paper, leaving no
room on the second page for the signatures, which were writ-
ten along the side of the will on the third page, this was held
sufficient.  So, also, when the attestation was opposite to the
end of the will, upon the third side of the sheet, the will end-
ing on the second side; so, also, when the testator wrote his
name, cross-wise upon the side of the paper, near the foot,
the witnesses names being at the bottom of the page.  And
we might multiply authorities, but enough has been glanced at
to sustain the judgment of this Court in the case before us,
that there was no error in the charge of the Court.  If the
jury believed from the evidence that it was so signed by the
testator, with the intention to sign it at his will, it was a good
signature, for such is the law of Georgia.

2. The Court charged the jury that if they believed from
the evidence that one of the witnesses was suggested to
testator as a witness to his will, and testator assented to such
suggestion, such assent was, in law, a request, or equivalent
to a request.  This is the second ground of error assigned.
The facts in the case were substantially as follows:  Daniel
Huff went to the warehouse of Gray, Bedell & Hughes, bring-
        ing with him Mr. Stewart, his object being to execute
703     *the will which he had with him.  Mr. Gray was out,
        one of the witnesses he desired.  After waiting some
time for him, Major Alexander came in, when Mr. Bedell
stated to testator that he would answer the purpose as well.
Testator said that he was not acquainted with him.  Bedell said
that he would introduce him, which he did, remarking that
testator wanted him to witness his will.  They all stepped to
a desk and executed the paper.  Out of these facts grew the
charge of the Court.  We are of opinion that there was no
error in the law given by the Judge to the jury.

The Code provides no special formalities about the wit-
nesses to a will.  It is sufficient if they attest and subscribe

the will in the presence of the testator. The law implies the request in the consummation of the act, and the authorities support this reasonable and legal proposition. In Brown v. DeSelding, 4 Sandford, Supreme Court, New York, 10: "When witnesses were sent for by the attendants of the testator, in his presence and without objection, and upon their introduction he sets him to the execution of his will, he adopts the act of his attendants, and makes their request his requests." In Peck v. Cary, 38 Barb., New York, 77, witnesses were called in by the person who drew the will, who asked them to witness testator's will, testator standing close by and saying nothing; they witnessed it. This was held sufficient. In Gilman, 38 New York, 364, two witnesses were called in by one who was with testator, who said to them, Mr. G. requests you to witness his will, when they signed, testator making no objection; held good. One case is found where the party was deaf, and the witness were presented substantially as in the case just cited, and it was held sufficient. And we lay down the rule of law to be clearly established that no special request by the testator is necessary to constitute the attesting witnesses competent. If he does not object his assent is equivalent to a request, and is conformable to the requirements of the law.

3. Counsel for caveators requested the Judge to charge in effect that, if Alexander, the witness referred to, knew nothing of the testable capacity of the testator, he was not in law *an attesting, though a subscribing witness, and the will in that case was void. The reply of the Judge was, "that is the law, gentlemen. I give you that in charge. But furthermore, I charge you that if he was introduced to him and looked at him, the law implies that he knew whether or not he had testable capacity."

The argument in this case has been pressed upon the meaning of the word attest in the Code, that it implies relation to the capacity of the testator at the time of the execution. The rule laid down as the judgment of this Court, in Potts v. House, is simply to the effect "that the opinions of subscribing witnesses to a will as to the sanity of the testator are admissible without stating the facts upon which they are founded." And if the opinion of Alexander had been invoked in this case as to the sanity of the testator, the fact that he did not know him would have been a good objection to his giving his opinion; but to say under our Code that the attesting means simply witnessing and the subscribing only that such witness shall sign his name and the factum of the execution is the object of the attestation and subscription, that such probable inability to testify as to mental capacity rendered the will void, is not and never was the law of this State.

This would be to reverse all rules of law, and to hold that, because a subscribing witness, called in to prove the mere

execution of a will, did not know the testator sufficiently to know his mental capacity, it was to be presumed he was insane or incompetent, and declare his will void.

The reverse of the rule is true, that all men are presumed to be sane until the contrary is proved. We recognize the doctrine that, except subscribing witnesses to a will, none but experts are competent to testify as to their opinion of the testator's capacity. But we do not hold that even they are not subject to the closest cross-examination upon the grounds, facts and reasons for their opinions, of which the jury are the judges. And by close examination into the principles enunciated in the judicial expositions of the law on the subject, it will be found that the expression of the *opinion by subscribing witnesses is admitted more upon the presumption of knowledge of a fact than the caprice of an opinion. The two may be blended and the one include the other, but the very case is a demonstration of the difference.

We do not hold with the Judge below, that this request was the law. We do not so regard the office of a subscribing witness to a will, under our Code, that he is called on to adjudge the mental capacity of the testator. His act is to bear witness to the execution of the paper.

4. The addition of the Judge to the charge which is here assigned as error, we take in connection with the charge itself, and looking at the testator being sufficient to imply testable capacity, means, that all men are presumed sane—and being introduced to a man and seeing him personally, would not change the presumption, but strengthen it. But as the issue was not in controversy and did not affect the merits of the case, and seems to express only, such a presumption as met the proposition of the charge, that the will was void by holding him to be a good subscribing and attesting witness, and that his introduction and cursory examination of him established only this much and did not go to the jury to weigh in their verdict, we do not consider the remark such error as will invoke the reversal of this Court of the judgment below.

Judgment affirmed.