21830. THORNTON v. HULME, Administratrix.

ARGUED OCTOBER 9, 1962—DECIDED NOVEMBER 8, 1962—
REHEARING DENIED NOVEMBER 19, 1962.

*Harold A. Boggs, O. J. Tolnas,* for plaintiff in error.
*John W. Williford, Williford & Grant,* contra.

MOBLEY, Justice. ■ Caveator urges that the court erroneously directed a verdict for propounder because there was an issue of fact under the evidence relating to the proper execution of the will, that is, "whether testatrix signed the will in the presence of all of the purported witnesses, and whether the purported witnesses signed in the presence of the testatrix and the other witnesses." A statement of basic rules is in order. The attesting witnesses must sign in the presence of the testator. *Code Ann.* § 113-301. The testator must either sign in the presence of the attesting witnesses or acknowledge his signature to each of them in whose presence he did not sign. *Webb v. Fleming,* 30 Ga. 808 (1) (76 AD 675); *Wood v. Davis,* 161 Ga. 690 (1) (131 SE 885). The witnesses need not sign in the presence of each other. *Webb v. Fleming,* supra, headnote 2; *Whitfield v. Pitts,* 205 Ga. 259, 269 (53 SE2d 549).

*Code Ann.* § 113-602 provides that: "Probate by the witnesses, or probate in solemn form, is the proving of the will, after due notice to all devisees and legatees and all the heirs at law, by all the witnesses in life and within the jurisdiction of the court, or by proof of their signatures and that of the testator, if the witnesses are dead, blind, incompetent or inaccessible, and the ordering to record of the will so proved." In the present case four persons affixed their signatures below the signature of the testatrix. Three were present at the probate proceedings and testified; the fourth was out of the State and her signature was proved by her mother. All four persons were therefore properly accounted for. *Bloodworth v. McCook,* 193 Ga. 53 (1) (17 SE2d 73).

Mrs. Cooper, one of the attesting witnesses, testified, "I saw Virginia Thornton [testatrix] sign this will; it was signed in my presence and in the presence of each of these witnesses." Mrs. Martin, another attesting witness, testified, "Miss Virginia Thornton signed this will in my presence; she signed it in the presence of the other witnesses to the will. . ." No witness testified that each witness signed in the presence of the testatrix, but propounder introduced into evidence the will containing the

following attestation clause: "Signed, sealed, published and declared by the above named testator, Virginia Thornton, on the 17th day of August, 1954, as and for her last will and testament in the presence of us who, at her request and in her presence and in the presence of each other, have hereunto subscribed our names as witnesses the same day and date." The signature of testatrix appears immediately before the attestation clause and the signatures of the witnesses immediately after the clause. This is a sufficient attestation clause such that its introduction into evidence raised a presumption of the proper execution of the will. *Underwood v. Thurman,* 111 Ga. 325 (3), 330 (36 SE 788); *Wood v. Davis,* 161 Ga. 690, 691 (3), supra; *Saliba v. Saliba,* 202 Ga. 791, 793 (10) (44 SE2d 744). There was, therefore, a presumption that the testatrix signed in the presence of the witnesses and that the witnesses signed in the presence of the testatrix. There was testimony that testatrix signed in the presence of each of the witnesses.

Caveator argues that the testimony of Mrs. Sailers, the fourth person whose name appears below the name of the testatrix, and of Judge Coke Davis, the ordinary before whom this case appeared in the first instance, shows that there was no proper execution. Mrs. Sailers signed below and to the left of the other three persons who signed below the testatrix. She signed as a notary public. There is, of course, no requirement of law that the signature of the testatrix or the signatures of the attesting witnesses be notarized. If Mrs. Sailers in the presence of the testatrix notarized the signature of the testatrix, the testatrix having signed in her presence or acknowledged her signature to her, she would be no more than another attesting witness. If she notarized the signatures of the attesting witnesses, her signature would be of no effect, there being no requirement at law of such a notarization. She was asked whether she recalled the proceedings before the ordinary where a question was raised as to whether she was present when the will was signed. Her testimony is unclear as to whether she was present when the testatrix signed, when the witnesses signed, and whether she notarized the signature of the testatrix or only the signatures of the witnesses. She stated that she does not witness anything

unless she sees the person sign it, and swore absolutely that she was present "at the time the other witnesses signed it." Judge Davis testified, "I believe that one of them did say that it was brought to her and wanted her to notarize their signatures. It seems like it was something like that."

The testimony of Mrs. Sailers and Judge Davis is some evidence that the will was not properly attested by Mrs. Sailers. It is not evidence of an insufficient attestation by the other witnesses. The will was executed August 17, 1954, and the testatrix died November 27, 1960. At the time of her death, *Code Ann.* § 113-301 had been amended by Ga. L. 1958, pp. 657, 658 to require a minimum of two competent witnesses, and such amendment was made applicable to the wills of persons dying after March 25, 1958, the date of approval of the act. Ga. L. 1958, p. 673, § 27. There being no evidence tending to show a failure to comply with the formalities of execution as to three of the witnesses, one more than required by law for this will, the trial court correctly directed a verdict for propounder on the issue of execution.

■ Caveator argues that the court erred in directing a verdict for propounder because the evidence raised an issue of fact as to whether or not testatrix was suffering from monomania, that is, "an unfounded delusion and hallucination that caveator did not concede the deceased testatrix's right to the real property conveyed by the testatrix's mother to her, whereas as a matter of fact the caveator did concede such right, and did not contend at the time of making said will that said testatrix had no right to one-half interest in said property."

The attesting witnesses testified that at the time of the execution of the will testatrix was of sound and disposing mind and memory. Caveator introduced the testimony of Miss Willie Whitehead that she knew testatrix, that testatrix on numerous occasions had discussed with her the clause in her will disinheriting caveator, that testatrix never did like caveator's marriage, that she did not leave the property to caveator because "they had hurt her feelings." She testified, "Virginia was the type you asked me about her mind; I think she had a grand mind, there was nothing wrong with her mind—that when you hurt her

feelings or made her mad, she was the type that didn't get over it regardless of who it was. . ." When asked if there was any reason for testatrix's having disinherited caveator other than caveator's having hurt her feelings, the witness testified in substance that certain persons mortgaged the land in question during the war, that caveator was on the land with these persons at the time but she did not know if he was present at the exact time the land was mortgaged, that testatrix paid off the mortgage and that was the reason the land was in her name, that testatrix said caveator always claimed he was going to get his half, that testatrix paid off the mortgage and that was why she would get so mad when caveator would tell her that he would get his part of the farm.

Caveator introduced the testimony of Mrs. Alice Sites, who testified that testatrix "had a good mind but she possessed a hatred for Arthur [caveator]." When asked whether she could swear as to the mental condition of testatrix on the date of her death, Mrs. Sites replied, "I said she had a good mind. She was a good worker and a steady worker. But the only thing was that she hated her brother." When asked whether she knew what a hallucination is, she replied, "Yes, I know." In responding to the question whether she ever saw testatrix have hallucinations, she said, "I don't think it was a delusion or hallucination; it was getting mad. . . I don't know what her mental condition was in August of 1954, but it must have been pretty bad for any sister to feel that mean towards her brother. . . I have never said she was insane; I said her mind was warped."

Caveator, sworn as a witness in his behalf, testified that when he heard that his mother had deeded the entire land to his sister he "checked into it for a while" and "thought about it" and "did consider bringing suit" to get his part but that he "decided that was the wrong thing to do" because his mother "had the right to convey the property to whomever she wanted to" and that thereafter he "never contended that that was my place."

Monomania is partial insanity, as distinguished from general insanity. The delusion of the monomaniac must spring up spontaneously in his mind and not be the result of evidence of any kind. An insane delusion does not mean a mistaken con-

clusion from a given state of facts, nor a mistaken belief as to the existence of facts. An erroneous conclusion of a sane person may arise from incorrect reasoning or from a deduction from information which he supposed to be correct. The subject matter of the insane delusion must have no foundation in fact and must spring from a diseased condition of the intellect. *Bohler v. Hicks*, 120 Ga. 800, 802, 804 (48 SE 306); *Dibble v. Currier*, 142 Ga. 855, 856 (1) (83 SE 949, AC 1916C 1). The mere dislike of certain persons, or ill feelings towards them, causing their exclusion from a will, is not monomania. *Brumbelow v. Hopkins*, 197 Ga. 247 (1) (29 SE2d 42).

The testimony in support of the caveat is not evidence of monomania. The substance of the delusion is alleged to be that testatrix believed caveator would never concede testatrix's right to all of the property whereas caveator did concede her right to all of the property. Caveator testified that at one time he investigated his mother's disposition of the entire property to his sister and contemplated bringing suit. Any belief of testatrix that her brother was continuing to assert a right which he once had asserted is not a delusion springing from a partially diseased or disordered intellect but is at most an erroneous conclusion or deduction from known facts. If testatrix erroneously concluded that caveator was continuing to assert a right which he had once asserted, the conclusion was at least in part the fault of caveator, for the record is devoid of any evidence that he communicated to her his acquiescence in her ownership of the entire tract.

The testimony of the subscribing witnesses having made a prima facie case of testamentary capacity for the propounder, and caveator having offered no evidence tending to show incapacity, the trial court properly directed a verdict for propounder on this issue. *Anderson v. Anderson*, 210 Ga. 464 (80 SE2d 807).

■ Caveator insists that the trial court erred in directing a verdict for propounder because the evidence shows that the will was executed under a mistake of fact as to the conduct of caveator, the heir at law of testatrix, viz: that caveator was continuing to assert a right to one-half of the property whereas

caveator was not continuing to assert such a right. *Code* § 113-210 provides: "A will executed under a mistake of fact as to the existence or conduct of an heir at law of the testator is inoperative, in so far as such heir at law is concerned, but the testator shall be deemed to have died intestate as to him."

"There is a difference between a 'mistake' arising from mere ignorance and one which results from an error of judgment after investigation or from negligent or wilful failure to make a proper investigation by means of which the truth could be readily and surely ascertained. It is to such a mistake as that first indicated that section 3262 [*Code* § 113-210] applies." *Young v. Mallory,* 110 Ga. 10, 12 (35 SE 278); *Bohler v. Hicks,* 120 Ga. 800, 807 (3), supra; *Dibble v. Currier,* 142 Ga. 855, 859 (2), supra.

Caveator's evidence shows no more than an erroneous deduction or conclusion by testatrix that because caveator once asserted a right to one-half of the property, he was continuing to do so. This is not ignorance of the basic facts. It is at most an error of judgment resulting from her failure to make an investigation of the matter, which does not constitute a mistake of fact within the meaning of *Code* § 113-210. As stated in Division 2, any mistaken belief of testatrix that caveator was continuing to assert a right to one-half of the property was at least in part the fault of caveator, since the record fails to show that caveator ever communicated to testatrix his acquiescence in her ownership of the entire tract. It was not error for the trial court to direct a verdict for propounder on this issue.

4. The evidence demands the verdict.

*Judgment affirmed. All the Justices concur.*