24726. HERRIN v. HERRIN et al.

SUBMITTED JULY 8, 1968—DECIDED SEPTEMBER 24, 1968.

*Milton F. Gardner, James E. Peugh,* for appellant.
*Robert H. Herndon, Eva L. Sloan,* for appellees.

MOBLEY, Justice. This appeal is from a judgment sustaining the caveats of Mrs. Grace Herrin Meeks and Mrs. Hazel Herrin

580

Simmons to the will of their father, Luther Herrin. The will was admitted to record as his last will and testatment, provided, however, that it is to be inoperative as to the two named caveators, and as to these two heirs at law the testator was deemed to have died intestate. See *Code* § 113-210.

Enumerated as errors are: (1) the overruling of the motion of the appellant for a directed verdict on both grounds of the caveats, undue influence exerted upon the testator by his wife, the propounder, and that the will was executed under a mistake of fact as to the conduct of the appellees, heirs at law of the testator; and (2) the entering of the judgment on that portion of the verdict holding that the will shall be inoperative as to the above named caveators, because the evidence was insufficient to sustain it.

■ The motion to dismiss the appeal, on the ground of failure to file the enumeration of errors within ten days after the case was docketed in this court, is without merit and is denied. The appeal was docketed in this court on May 22, 1968, and the enumeration of errors and brief of the appellant were filed on June 4, 1968, thirteen days later. The tenth day was on Saturday, June 1, 1968, thus extending the time until Monday; and Monday, June 3, 1968, was a public and legal holiday as provided by Ga. L. 1945, pp. 123, 124 *(Code Ann.* § 14-1809). Thus the time was extended until Tuesday, June 4, 1968, under *Code* § 102-102 (8), as amended by Ga. L. 1958, pp. 388, 389; Ga. L. 1967, pp. 579, 580.

■ The testator devised his real property to his wife, Mrs. Anita Dawson Herrin, for life or widowhood, with remainder to his minor daughter, Joni. He bequeathed substantially all his personal property in fee simple to his wife. Each of the caveats alleged that the will was executed by the testator "under his mistake of fact as to the conduct of caveator, one of his children, the mistake of fact under which testator labored and acted when making said alleged will being that he believed that caveator had spread false and scandalous rumors about him and his wife, were undutiful, and had ceased to love him and hated him, and wanted to have nothing whatever to do with him, . . ." and alleged further that the testator was

ignorant of the true facts, and that "the caveator was innocent of said conduct and spread no such false rumors, was dutiful, and did not hate him but still had love and affection for him."

The jury found in favor of the appellees, who were two of the five caveators to the will, on the ground that the will was executed under a mistake of fact of the testator as to the conduct of each of these two heirs at law. Thus the sole question for decision is whether there was any evidence to support the verdict, and whether the trial court erred in denying the motion for directed verdict of the appellant.

The evidence offered by the appellees was to the effect that they had not spread rumors, were not undutiful, and did not hate their father, but loved him and did want to have something to do with him. The issue is whether the father, when he made the will in 1963, *believed* such conduct on the part of his two daughters as the caveats alleged that he believed.

There is no evidence that the father believed that his two daughters spread false and scandalous rumors about him and his wife, or believed that they were undutiful to him, or had ceased to love and hated him, or that they wanted nothing to do with him. On the contrary, it appears that insofar as he and they were concerned there was a separation of ways from the time of the divorce proceedings brought against him by his former wife.

The evidence shows that the testator and his former wife and five children were living together harmoniously until his wife discovered that he was dating another woman. She and one of the sons found them together at a public dining place one evening. She filed divorce and alimony proceedings, and the five children remained with the mother and took her side in the controversy. After a hearing on temporary alimony, it was discovered that she had a terminal disease, and the testator agreed to, and did, provide for her and his family until her death. The testator broke off all family relations with his wife and children, and there were few contacts between him and his children thereafter until his death. It is clear from the record that he severed his relations with his children because they went with their mother against him in the divorce proceed-

ing, and they severed theirs with him because of his conduct toward their mother.

Furthermore, the testator explained in Item 3 of his wills executed in 1958 and 1963, the latter executed because of the birth of a child since the first was made, why he left only a nominal sum to the children of his first wife. Item 3 is as follows: "Over a period of years preceding the making of this will much friction has existed between my children of my first marriage and me, and in recent years they have had no contacts with me whatever. In their youth I provided amply for all of them, and undertook to provide each of them with far better educations than I received. As all of my said children are now grown and have families of their own, and as I feel that I have done and performed my whole duties as a father to each and all of them, I make only the following bequest to them after a long and careful consideration of all of the facts of my family situation and of the probable situation of my relatively small estate. I give, will, devise and bequeath unto each of my children, to-wit: Mrs. Grace Herrin Meeks, Mrs. Hazel Herrin Simmons, L. V. Herrin, Lee Roy Herrin, and Watson Herrin, the sum of one ($1.00) dollar, the same to be paid out of moneys of my estate. Should any one or more of my said children predecease me, leaving a child or children of their own surviving them, then such surviving child or children shall take and have the bequest here provided for its or their deceased parent. I desire to make it clear that the nominal bequests herein made to my said children are not the result of any mistake, misunderstanding, prejudice or revenge, and I make the same after having made long thought of facts and circumstances extending back over periods of their whole lives." This identical item appeared in his previous will executed in 1958, after his first wife's death in 1956.

The statement of the testator in Item 3 of his will is the highest and best evidence of why he left his five children nominal sums. It expresses his reason for doing so at the very time of the execution of the will. The evidence demands the conclusion that there was friction between the testator and his five children at the time the will was executed. To say that

he left them only nominal sums because he believed that they were guilty of certain conduct is nothing more than conjecture, which flies in the face of his own statement made in the will as to why he was leaving his property as he did. Considering, as he stated, all the existing circumstances, he made a reasonable and logical disposition of his property.

At the time the testator made the will in 1963, he knew the facts. He knew that his children had taken their mother's side in the divorce action, had not visited his home since the separation, that they had had practically no contacts with him since the divorce action, and that they had never met his youngest daughter. If he was in error as to their "conduct" toward him, it was not due to failure on his part to know the facts, for he knew how they acted toward him; and any mistake on his part as to their conduct (that is, as to how they felt toward him, whether they hated him, did not love him, and wanted to have nothing to do with him), was due to an error of judgment because of failure on his part to fully investigate and determine the truth, and this would not bring the present case under *Code* § 113-210, which provides: "A will executed under a mistake of fact as to the existence or conduct of an heir at law of the testator is inoperative, insofar as such heir at law is concerned, but the testator shall be deemed to have died intestate as to him."

In the early case of *Young v. Mallory*, 110 Ga. 10 (35 SE 278), the testator, Ellerbee, knew that a certain woman claimed to be his niece. In his will he left her nothing. She contested the will on the ground that it was executed by him under a mistake of fact as to her existence, that is, that she was his niece. The court, in holding that the will was not made under a mistake of fact such as would invalidate the will, stated that the testator ". . . at the time he made his will, was neither under a mistake of fact nor ignorant of the existence or conduct of Mrs. Young for want of information or the opportunity to obtain it. There is a difference between a 'mistake' arising from mere ignorance and one which results from an error of judgment after investigation or from negligent or wilful failure to make a proper investigation by means of which the truth

could be readily and surely ascertained. It is to such a mistake as that first indicated that section 3262 [now § 113-210] applies. It could not have been intended to operate in instances of the latter character. If Ellerbee disinherited his niece because convinced that she was not his niece, he deliberately arrived at his conclusion of fact after an investigation satisfactory to himself, without choosing, as he might easily have done, to make one more thorough and searching. That his conclusion was wrong affords no cause for destroying his testamentary scheme. It was a question to which his attention was directly called, and he had the undoubted right to decide it for himself. That he did not avail himself of all the light at his command, and as a consequence fell into an error as to the real truth of the matter, can not be ground of judicial interference with his will. It would be establishing a very dangerous precedent were the courts to lay down the doctrine that, in a case where no fraud or undue influence was proved, a will might be set aside because the testator did not rightly determine for himself a question of fact, when it appeared that he had full opportunity and ample time to learn the truth. Whose will would be safe if liable to be invalidated upon a ground of this nature? In this connection, see *Jones v. Grogan,* 98 Ga. 552 (1), 554. In one sense, Ellerbee did make a mistake of fact in determining that Mrs. Young was not his niece, if he did so determine; but it would be more accurate to say he committed an error in deciding a question of fact, because he did not believe Mrs. Young's statement with reference thereto and did not take the proper steps to test its accuracy. He had the right to act on the evidence before him and form his own opinion therefrom, and he also had the right to refuse to seek other and additional evidence. To hold otherwise would be going a long step towards substituting for his actings and doings in the premises something else which we might happen to think he ought to have done. We would be unwilling, in any view of the matter, to assume such a grave and unwarranted responsibility." See also *Bohler v. Hicks,* 120 Ga. 800 (3), 807 (48 SE 306); *Dibble v. Currier,* 142 Ga. 855 (2), 859 (83 SE 949, AC 1916C 1); *Thornton v. Hulme,* 218 Ga. 480 (3), 485 (128 SE2d 744), all based on mistake as to conduct.

Assuming that the testator in the present case believed that his children did not love him, and hated him, when in fact this was not true, he had the right to accept the evidence before him and form his own opinion therefrom, and he also had the right to refuse or fail to seek other and additional evidence, just as in *Young v. Mallory,* 110 Ga. 10, supra.

The trial judge erred in denying the motion for directed verdict of the appellant, and in entering judgment for the appellees.

*Judgment reversed, with direction that judgment be entered for the appellant. All the Justices concur.*