## S03A1258. MILES v. BRYANT et al.
(589 SE2d 86)

FLETCHER, Chief Justice.

The narrow issue presented in this appeal is whether the will of Margaret C. Tidwell is properly attested. Emilee Miles, the propounder of the will, appeals the grant of summary judgment in favor of Grace Bryant and the other caveators, denying the petition to probate in solemn form because of a lack of attestation. Because there are genuine issues of material fact that only a jury can resolve, we reverse.

The writing offered for probate consists of six typewritten pages with the first page being entitled "Last Will and Testament of Margaret C. Tidwell." As shown on the attached Appendix, on page 4, the will's last item is followed by the signature of Margaret C. Tidwell, Testatrix. The attestation clause follows Tidwell's signature and continues to page 5 where it is signed by two attesting witnesses, one of whom is Martha Marie Cooper. A self proving clause[1] commences on page 5 and is completed on page 6 where it is again signed by the tes-

---

the development plans county had already approved).
[1] OCGA § 53-4-24.

tatrix, Margaret C. Tidwell, by two witnesses, including one of the attesting witnesses, Martha Marie Cooper, and by Heather D. Capallo, a notary public.

Construed most favorably to the propounder Miles, for purposes of summary judgment,[2] the record contains the following evidence. Cooper was Tidwell's friend for many years. She visited Tidwell almost daily during her hospitalization in November and December 2001. Tidwell told Cooper of her desire to execute a will. She wanted Cooper to witness her will and Cooper agreed to do so.

Upon opening the door to Tidwell's hospital room on December 10, 2001, Cooper saw Tidwell signing papers in Capallo's presence. After being invited into the room Cooper observed that the papers were Tidwell's will. Capallo told Cooper that she and Tidwell had already signed the will and Cooper also needed to sign it. Tidwell told Cooper where to sign, and, while in the room with Tidwell and Capallo, Cooper placed her signature on the will.

Capallo often notarizes signatures at the hospital. Each time she notarizes a signature of the hospital's patient, she confers with the medical staff and with any family members present and speaks "with the patient to ensure that they appear to know and understand what they are signing and briefly review the document with said patient." She was asked to notarize Tidwell's signature on December 10, 2001. While she has no specific recollection of any conversation, she remembers seeing Tidwell on that occasion. Although she claims she did not notarize Tidwell's first signature on the will, she states that she notarized Tidwell's signature on the self proving clause of the will.

1. The opportunity to determine the disposition of one's property at death by means of a will has long been a valuable right in this state.[3] In order to preserve that right, from this Court's early days the rules relating to execution have remained simple and issues of proper attestation have generally presented fact issues for a jury.[4]

The proper execution of a will requires nothing more than a writing signed by the maker and the attestation of two competent witnesses in the maker's presence.[5] The maker may either sign the will in each witness's presence or acknowledge her signature to the witnesses.[6] The witnesses are not required to sign in the presence of each other.[7] Nor is there any requirement that the maker and the

---

[2] *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

[3] *Sims v. Sims*, 265 Ga. 55 (452 SE2d 761) (1995).

[4] See *Watford v. Forester*, 66 Ga. 738 (1881).

[5] OCGA § 53-4-20; *Whitfield v. Pitts*, 205 Ga. 259 (53 SE2d 549) (1949).

[6] *Webb v. Fleming*, 30 Ga. 808, 811 (1) (1860); *Thornton v. Hulme*, 218 Ga. 480, 481 (128 SE2d 744) (1962).

[7] *Webb*, 30 Ga. at 812 (3); *Thornton*, 218 Ga. at 481.

witnesses sign on the same page.[8] Additionally, proper attestation requires no particular form and proper attestation is not dependent upon the existence of an attestation clause, only that the witnesses' signatures are affixed to the writing.[9]

Most importantly for this case, Georgia law does not require publication; that is, the maker need not declare to the attesting witnesses that it is her will or reveal its contents to them. In 1923, in *Slade v. Slade*,[10] this Court discussed at length the requirements of attestation and publication of wills. After an exhaustive survey of the relevant law, the Court concluded that publication is not required: "[i]t is not necessary that a testator shall declare the instrument he executed to be his will or that the witnesses know that it is a will."[11] This holding retains its vitality.[12]

2. Applying this well-settled law to the facts of this case, it becomes clear that a jury issue exists on whether Tidwell's will was properly signed and attested. Either of the testatrix's two signatures on the will, properly attested, is sufficient under long-standing Georgia law, because there is no requirement that it be signed at any particular place, only that the writing be signed with testamentary intent. This Court has consistently upheld the validity of wills notwithstanding the fact that the maker's signature appears in an unusual place. For example, in *Huff v. Huff*,[13] this Court held that the maker's signature below the attestation clause was adequate. Similarly, in *Waldrep v. Goodwin*,[14] the Court held that the fact that the maker signed her will in the blank space of the attestation clause would not invalidate the will. Finally, more recently, in *Hickox v. Wilson*,[15] this Court unanimously upheld a will in which the testatrix's signature appeared only on the third page, the self proving affidavit page, above the line designated for testator, and the notary public's signature appeared on the line intended for the testatrix's signature. In light of this precedent, Tidwell's signature, following the self proving clause and above the line designated for "Margaret C. Tidwell, Testatrix," is sufficient when signed with testamentary intent.

---

[8] *In re Estate of Brannon*, 264 Ga. 84 (441 SE2d 248) (1994) (where all of signature pages physically connected as part of will, signatures of maker and witnesses can be on different pages).

[9] *Whitfield v. Pitts*, 205 Ga. at 269; *Cornelius v. Crosby*, 243 Ga. 26 (1) (252 SE2d 455) (1979).

[10] 155 Ga. 851, 858-859 (118 SE 645) (1923).

[11] Id. at 851-852 (2) (a).

[12] See *Cornelius*, 243 Ga. at 27 (4); *Ellis v. O'Neal*, 175 Ga. 652 (165 SE 751) (1932).

[13] 41 Ga. 696 (1871).

[14] 227 Ga. 560 (181 SE2d 837) (1971).

[15] 269 Ga. 180 (496 SE2d 711) (1998); see also *Westmoreland v. Tallent*, 274 Ga. 172, 174-175 (549 SE2d 113) (2001) ("self-proving affidavit is part of the will and a testatrix's signature solely on the affidavit constitutes a signature on the will)."

3. The record also contains sufficient evidence of attestation by two competent witnesses to survive summary judgment. As discussed above, the record shows that one of the attesting witnesses was Cooper,[16] who signed the will in the hospital after observing Tidwell sign it, being told by Tidwell that it was Tidwell's will, and after hearing Tidwell acknowledge that she had already signed it. Capallo placed her signature as notary on the will in Tidwell's presence and after observing Tidwell sign it. Above the notary's signature is a clause that reads in part: "Sworn to and subscribed before me by Margaret C. Tidwell, Testatrix . . . , this *10th* day of December, 2001." This jurat is legal evidence that Ms. Tidwell signed her name as testatrix on this document in Capallo's presence.[17] Capallo's statement that she did not recall that Tidwell declared the document to be her will does not destroy the validity of her signature. As discussed previously, there is no such requirement of publication in Georgia.

In summary, the evidence shows that the signatures of Tidwell, Cooper and Capallo are affixed to the six page writing, which throughout declares many times it is Tidwell's last will. The six pages of the will are physically connected. No one contests the validity of the signatures or the competency of Cooper or Capallo. It is undisputed that both of them saw Tidwell place her signature on page 6 and that Tidwell saw each of them place their signatures on that page. Where, as here, a written instrument purporting to be a will is signed by the maker and the signatures of two witnesses are affixed, the issue of proper execution and attestation is a question of fact for the jury. Accordingly, the trial court erred in granting summary judgment.

*Judgment reversed. All the Justices concur, except Benham, J., who dissents.*

---

[16] There is no dispute that Mark Meehan and Christopher Riggs, whose signatures appear on the will, did not observe Tidwell's signature nor did they hear her acknowledgment of it.

[17] Subscribe is defined as "write or sign (one's name) on a document . . . esp. at the foot as a witness." 2 New Shorter Oxford English Dictionary 3121 (1993 ed.).

## APPENDIX.

In the event . . . .

IN WITNESS WHEREOF, I have hereto set my hand and affixed by seal, this the __s/10__ day of s/December, 2001.

_s/ Margaret C. Tidwell_
MARGARET C. TIDWELL
Testatrix

Signed, sealed, declared and published by MARGARET C. TIDWELL, as and for her Last Will and Testament, in presence of us, the undersigned, who at her special

[end page 4]

instance and request, do attest as witnesses, after said Testatrix has signed her name thereto, in our presence, and in the presence of each other.

This the __s/10__ day of December, 2001.

_____
Witness
Address_s/ Martha Marie Cooper_
___[address written]_____


_____
Witness
Address_s/ Mark H. Meehan_____
_____[address written]_____

### SELF-PROVING CLAUSE

Before me, the undersigned authority, on this day personally appeared MARGARET

C. TIDWELL, _s/ Martha Marie Cooper_ and _s/ Mark H. Meehan_____

(Witness)                    (Witness)

. . . .

[end page 5]
. . . ., and that each of said witnesses was then at least fourteen years of age.

_s/ Margaret C. Tidwell_
MARGARET C. TIDWELL
TESTATRIX

_s/ Martha Marie Cooper_
Witness
_s/ Christopher B. Riggs_
Witness

Sworn to and subscribed before me by MARGARET C. TIDWELL, Testatrix, and sworn to and subscribed before me by _s/ Martha Marie Cooper_ and _s/ Christopher B. Riggs_, witnesses, this __s/10_, day of December, 2001.

_s/ Heather D. Capello_
Notary Public
[Notary stamp affixed]

BENHAM, Justice, dissenting.

Because the majority opinion in this case ignores the fraud upon the court in which the will in this case originated and approves of the manufacture of a valid will from a collection of invalid parts, I must dissent.

The trial court granted caveators summary judgment and denied probate because the will did not meet the requirement imposed by OCGA § 53-4-20 (b) that it be attested to by two persons. The will had signatures of two purported attesting witnesses, Cooper and Meehan. The will also contained a self-proving clause with the signatures of Tidwell, Cooper, and Riggs, which signatures were purported to have been notarized by Capallo. Based on undisputed evidence, however, the trial court recognized that Meehan and Riggs had neither witnessed Tidwell signing the will nor even met her; that Cooper did witness Tidwell signing the will; that Capallo, the notary, did not notarize the signatures of Cooper, Meehan, or Riggs anywhere on the document, or notarize Tidwell's signature to the will, but did notarize Tidwell's signature on the self-proving clause. Based on those facts, the trial court properly concluded that there was only one attesting witness, contrary to the requirements of OCGA § 53-4-20 (b), and denied probate.

The majority opinion ignores the fraud infecting almost every part of the document offered for probate. Two of the purported witnesses had never met the testatrix, and the single genuine attesting witness admitted she procured those fraudulent signatures. The notary specifically disclaimed the accuracy of the self-proving affidavit on which the majority relies to create a second attesting witness, and the record establishes that the affidavit was altered after the notary signed it. The majority's approach to this case permits the cobbling together of bits and pieces of a document, ignoring the fraud involved in its execution, relying on hearsay, and creating a valid will out of pieces as to which there is no certainty of validity from the evidence. In none of the cases cited by the majority were the courts presented with fraud such as purported attesting witnesses who had never even met the testatrix and alterations to a notary's jurat after the notary has signed and affixed a seal, all of which occurred in this case.

Furthermore, the suggestion of the majority that whether the will was properly executed and attested to are questions of fact misses the mark. The facts of who signed where and when are not at issue in this case, only whether the document as it was executed is a valid will, which is a question of law, not fact.

The majority's reversal of the well-reasoned decision of the trial court establishes a new low-water mark for appellate consideration of wills, approving the fabrication of a will from fraud-riddled bits

and pieces. Because the decision in this case encourages deception perpetrated on the courts and invents questions of fact where none exist, I dissent.

DECIDED NOVEMBER 17, 2003.

*Glen A. Cheney, DuAnn C. Davis*, for appellant.
*Cheney & Cheney, Curtis V. Cheney, Jr.*, for appellees.