S01A0337. WESTMORELAND v. TALLENT.
(549 SE2d 113)

HUNSTEIN, Justice.

This is an appeal from the judgment entered on a jury verdict in a will contest regarding the estate of Irene Lackey Lane. For the reasons which follow, we affirm.

The testatrix who died in February 1997 executed a will in 1960 leaving her estate to several beneficiaries, including her niece, Martha Westmoreland. The testatrix executed another will in 1992 renaming Westmoreland and including as a new beneficiary Westmoreland's daughter, Kim Tallent. The 1960 will was probated and Westmoreland, the only surviving beneficiary of the 1960 will, was granted letters of administration. Thereafter, Tallent sought to have those letters revoked and the probate order vacated, and proffered in probate an unexecuted copy of the 1992 will. After a bench trial, the probate court issued an order vacating the earlier orders relating to the 1960 will and declaring the 1992 will valid. Westmoreland appealed to the superior court and following a trial, a jury determined that the 1992 will was valid and not revoked, and the superior court entered judgment accordingly. Westmoreland appeals from the denial of her motion for new trial.

The evidence adduced at trial established that the testatrix's long-time attorney prepared the 1992 instrument in accordance with her wishes. The will made some specific bequests to family members and divided the remainder of the estate between Westmoreland and Tallent. The attorney testified that he had previously made a will for the testatrix's husband and that six months after he probated the husband's will the testatrix approached him about making her will. He testified that he, a secretary and a secretary-notary public wit-

nessed the testatrix's execution of the instrument. He further testified that the copy of the instrument introduced into evidence was the same as the executed original. Although the testatrix took the original of the 1992 will with her when she left the attorney's office, the attorney explained that it was his standard office procedure to have the testator sign the original will and for him to put a copy of the unexecuted will in a file designated for that client. The secretary-notary public testified that she notarized the document after she witnessed the testatrix, the attorney and another secretary sign the will and a self-proving affidavit. There was no evidence offered as to the whereabouts of the second subscribing witness or whether any efforts had been made to locate her. The testatrix became incapacitated beginning in 1994 and the attorney who was appointed her guardian ad litem testified to the similarities in the desires the testatrix expressed to him and the provisions contained in the copy of the 1992 will offered for probate.

1. Westmoreland contends that the will should not have been admitted to probate, arguing that testimony from all of the witnesses was required to prove due execution of the will, or proof that the witness was unavailable. Former OCGA § 53-3-6 (a) (effective until January 1, 1998) addresses lost wills and provides that if a will is lost during the testator's lifetime, destroyed without the consent of the testator during his lifetime, or lost or destroyed subsequent to the death of a testator, a copy of the will, "clearly proved to be such by the subscribing witnesses and other evidence," may be admitted to probate and record in lieu of the original. Id. This statute addresses problems that arise when there is only a copy of the original will and "provides the procedure to be followed where the original will is lost but a copy is available." *Horton v. Burch*, 267 Ga. 1, 2 (471 SE2d 879) (1996). Westmoreland contends that the language "proved to be such by the subscribing witnesses" in former OCGA § 53-3-6 (a) required Tallent to produce the second subscribing witness at trial or prove that the witness was unavailable, neither which she accomplished. Numerous Georgia cases interpreting the pre-revised probate code on the probate of lost or destroyed wills have held that when a copy of a lost or destroyed will is presented for probate, testamentary formalities apply requiring that its legal execution be proved by all of the subscribing witnesses in life and within the jurisdiction of the court as in proceedings for probate of a will in solemn form.[1] See, e.g.,

---

[1] OCGA § 53-4-46 of the revised probate code is sketchy in its treatment of lost or destroyed wills. Because the revised statute does not carry over the requirement that the copy of the will be proved by the "subscribing witnesses and other evidence," it is the opinion of Sarajane Love, Redfearn Wills and Administration in Georgia (Comparative Treatment ed. 1996), § 123, p. 193 that the "deletion of any reference to a requirement of clear proof

*Fletcher v. Gillespie*, 201 Ga. 377 (5) (40 SE2d 45) (1946) (proof of the execution of a will in a case of probate in solemn form and proof of the execution of a will in a case to establish and probate a copy where the will is missing may be made in precisely the same manner and by the same character of evidence, and in both, evidence other than the testimony of the subscribing witnesses, after the available witnesses have been produced at the hearing, is admissible for the purpose of proving the execution of a will); *Looney v. Looney*, 199 Ga. 415 (34 SE2d 520) (1945); *Mosely v. Carr*, 70 Ga. 333 (1883); *Kitchens v. Kitchens*, 39 Ga. 168 (1869). Cf. *Harvey v. Sullivan*, 272 Ga. 392 (2) (529 SE2d 889) (2000) (evidence established that witnesses were inaccessible); *McBride v. Jones*, 268 Ga. 869 (1) (494 SE2d 319) (1998) (due execution may be proved even if all witnesses are shown to be unavailable).

Tallent's failure to fulfill the testamentary formalities required by former OCGA § 53-3-6 does not demand reversal, however, as the testatrix executed a self-proving affidavit pursuant to former OCGA § 53-2-40.1. That statute authorized an alternate method for proving the will without the subscribing witnesses.[2]

> [A] will that is self-proved may be probated without the testimony of the witnesses, and the affidavit [signed by the testator in the presence of a notary public] creates a presumption, subject to rebuttal, that the requirements of execution and attestation were met.

(Footnote omitted.) Mary F. Radford, Redfearn Wills and Administration in Georgia (6th ed. 2000) § 5-8, p. 96. Whether a lost or destroyed will under former OCGA § 53-3-6 (a) may be validated by uncontroverted evidence from the notary public who notarized the affidavit regarding the execution by the testator of a self-proving affidavit is one of first impression in this State.[3] The Legislature first authorized a self-proving affidavit, which is a sworn statement that the will has been duly executed, in 1984 as a means of simplifying the evidentiary requirements of proving execution and attestation of a will. Radford, supra at § 5-8. In Georgia, a self-proved will creates a presumption that the requirements of execution and attestation were met and may be admitted to probate without the testimony of any subscribing witness. Id.; former OCGA § 53-2-40.1 (c). A self-proving affidavit is

---

raises doubt as to the continuing viability of the case law."

[2] OCGA § 53-4-24 of the revised probate code carries over former OCGA § 53-2-40.1.

[3] However, similar issues have been addressed elsewhere, and the weight of authority holds that a properly executed self-proving affidavit can validate the will. See *In re Estate of Carter*, 565 A2d 933 (Del. 1989); *In re Estate of Charry*, 359 So.2d 544 (Fla. App. 1978).

part of the will and a testatrix's signature solely on the affidavit constitutes a signature on the will. *Hickox v. Wilson*, 269 Ga. 180, 181 (496 SE2d 711) (1998). The self-proving affidavit serves a unique function in the probate of wills because it has the effect of permitting probate upon presentation of evidence that the testator signed the affidavit without requiring the personal appearance of any attesting witness before the court. Accordingly, there was ample evidence to support the jury's findings that the copy of the will offered for probate was in fact the will and testament executed by Irene Lacky Lane in 1992.

2. Appellant contends that there was not clear and convincing evidence to overcome the presumption that the missing 1992 will was revoked.[4] Whether the presumption of revocation is overcome is "determined by the trier of fact, and in reviewing the verdict, 'the evidence must be accepted which is most favorable to the party in whose favor the verdict was rendered.' [Cit.] The presumption of revocation may be rebutted by circumstantial as well as direct evidence, including declarations of the testatrix. [Cit.]" *McBride*, supra, 268 Ga. at 870 (2).

The evidence construed in favor of the verdict established that Tallent had a close familial relationship with the testatrix, that she had already acquired from the testatrix property titled in the testatrix's name, and that the disposition made under the 1992 will reflected the wishes of the testatrix as to the distribution of her estate. The attorney who drafted the 1992 will testified he continued to have contact with the testatrix until shortly before her death, and she never mentioned changing or revoking the 1992 will he had prepared for her. Before her death, the testatrix confirmed with her guardian her intentions as to the devise of her property. Accordingly, reviewing the evidence in the light most favorable to the party in whose favor the verdict was rendered, we find that there is simply no evidence that the testatrix destroyed the will at issue in order to reinstate her earlier will, and that the jury was authorized to conclude that the statutory presumption of revocation was rebutted. *Smith v. Srinivasa*, 269 Ga. 736 (2) (506 SE2d 111) (1998).

*Judgment affirmed. All the Justices concur.*

---

[4] Unlike the pre-revised statute, OCGA § 53-4-46 of the revised probate code governing probate in an instance where the original will is unavailable provides that the presumption of intent to revoke can now be overcome by a preponderance of the evidence rather than by the former standard of clear and convincing evidence.

DECIDED JULY 5, 2001 —
RECONSIDERATION DENIED JULY 27, 2001.

*Fox, Chandler, Homans, Hicks & McKinnon, Robert L. Chandler,* for appellant.
*Charles B. Brown, Raymond T. McCormack,* for appellee.