## S10Y0981. IN THE MATTER OF NERRYLLE MANNING-WALLACE.

### (695 SE2d 237)

PER CURIAM.

This matter is before the Court on Respondent Nerrylle Manning-Wallace's petition for voluntary discipline, filed after the issuance of a Formal Complaint and appointment of a special master. In her petition Manning-Wallace requests imposition of a Review Panel reprimand for her violations of Rules 3.3 (a) (4) and 3.4 (b) (1) of the Georgia Rules of Professional Conduct, see Bar Rule 4-102 (d). The State Bar recommended that the special master approve the petition, which the special master did.

The facts show that Manning-Wallace was injured in an automobile accident in 2003 and underwent physical therapy. She filed a claim pro se against the other driver and at the 2006 trial Manning-Wallace offered into evidence two documents she had produced previously to the other driver's insurance company. One was an ''Initial Evaluation'' form from the therapist and the other was an account statement from the therapist listing treatment from July 29, 2003 to October 15, 2003. A representative from the therapist's office testified at trial that they had no such documents in their records, that Manning-Wallace was not listed on the sign-in sheets for those dates, and that the statement was not a bill from their office. In her petition, although Manning-Wallace admits that the documents were fabricated, that she knew or should have known that the documents were fabricated and that her conduct violated Rules 3.3 and 3.4, she nevertheless denies ''creating'' the fabricated documents.

Looking at the punishment this Court has imposed for the intentional creation of false documents to deceive a court and harm another party, we held in *In the Matter of Dogan*, 282 Ga. 783 (653 SE2d 690) (2007) that disbarment was appropriate because the lawyer was held in criminal contempt by the trial court and defaulted in the disciplinary proceeding. In another case where the lawyer fabricated what purported to be an order from a federal appellate court, the punishment was an Investigative Panel reprimand, see *In the Matter of Rowan*, State Disciplinary Board Docket No. 4194 (no longer confidential due to subsequent disciplinary proceedings, see Bar Rule 4-208), and in a similar case where the lawyer forged a judge's signature on an affidavit of garnishment to deceive his client but which was not submitted to the court or other party, the Court imposed a 30-day suspension. See *In the Matter of Bagley*, 267 Ga. 311 (477 SE2d 834) (1996).

Here, having reviewed the record, it does not appear that a Review Panel reprimand is the appropriate level of discipline in this

case. Therefore, the Court hereby rejects Manning-Wallace's Petition for Voluntary Discipline.

*Voluntary petition rejected. All the Justices concur.*

NAHMIAS, Justice, concurring.

In this disciplinary matter, attorney Nerrylle Manning-Wallace now admits that she "knew or should have known" that two documents she offered into evidence at a jury trial in superior court, and previously disclosed to her opposing party in discovery, were fabricated. To make matters worse, the falsified documents were not submitted on behalf of a client, but rather in a lawsuit that Manning-Wallace filed pro se, seeking damages for purported treatment of injuries she had sustained in an automobile accident. In other words, she intended to profit directly and personally from the false information she provided to her opponent and the court. Remarkably, the State Bar recommends that Manning-Wallace's petition for voluntary discipline, which proposes that a Review Panel reprimand is the appropriate sanction for this misconduct, be accepted.

Today the Court properly rejects that petition, but it does so in a brief opinion that could be read to suggest that our only concern is with the level of discipline proposed in the petition. I write separately to discuss numerous errors and misconceptions that I see in the State Bar's analysis of this matter. My hope is that, by identifying these issues, they will not be repeated as the Bar continues to address this case.

1. Among the most important ethical requirements for Georgia lawyers is the duty of candor to the courts in which they appear, as set forth in Rule 3.3 of the Georgia Rules of Professional Conduct, see Bar Rule 4-102 (d). That rule provides specifically that "[a] lawyer shall not knowingly . . . offer evidence that the lawyer knows to be false." Rule 3.3 (a) (4). As the comments to Rule 3.3 clearly explain, the lawyers' obligation not to pollute our tribunals with false evidence is so strong that it may trump the wishes and interests of their clients and even the attorney-client privilege.[1] Lawyers owe

---

[1] See Rule 3.3, Comments [4] ("When evidence that a lawyer knows to be false is provided by a person who is not the client, the lawyer must refuse to offer it regardless of the client's wishes."), [5] ("When false evidence is offered by the client, . . . a conflict may arise between the lawyer's duty to keep the client's revelations confidential and the duty of candor to the court. Upon ascertaining that material evidence is false, the lawyer should seek to persuade the client that the evidence should not be offered or, if it has been offered, that its false character should immediately be disclosed. If the persuasion is ineffective, the lawyer must take reasonable remedial measures."), [6] ("Except in the defense of a criminal accused, the rule generally recognized is that, if necessary to rectify the situation, an advocate must disclose the existence of the client's deception to the court or to the other party. Such a disclosure can result in grave consequences to the client, including not only a sense of betrayal but also loss of the

a similar duty of fairness to opposing parties and their counsel, which specifically includes the obligation not to "falsify evidence." Rule 3.4 (b) (1). This is one of the prohibitions that secures "[f]air competition in the adversary system." Rule 3.4, Comment [1]. The maximum penalty for violation of both Rule 3.3 and Rule 3.4 is disbarment.

2. A more detailed discussion of the record will give context to many of my concerns about this case. This matter arises from an automobile accident involving Manning-Wallace on July 25, 2003. According to the State Bar and the record, the following facts are undisputed. On the date of the accident, Manning-Wallace was treated in an emergency room for muscle strain, soreness, and a headache. At the time, she was undergoing physical therapy for a problem that predated the accident. Her last treatment at the therapy clinic for that unrelated problem was scheduled for July 29, 2003.

Manning-Wallace filed a claim seeking damages from the other driver, who was insured by State Farm. The State Farm adjuster asked for documentation of her injuries and medical treatment. Among other things, Manning-Wallace provided the insurance company with the two documents at issue: an "Initial Evaluation" form from the therapy clinic, setting forth detailed information including a diagnosis and treatment plan for neck and back pain; and an account statement dated June 25, 2005, listing the type of and charge for treatments she received at the clinic on ten separate dates between July 29 and October 14, 2003, in the total amount of $630.

After Manning-Wallace was unable to settle her claim with State Farm, she filed a pro se lawsuit in Gwinnett County Superior Court in June 2005. During discovery she relied upon and referenced the two clinic documents. At the jury trial of the case in June 2006, Manning-Wallace introduced both documents into evidence in support of her claim of injuries and medical expenses due to the automobile accident. The defendant, however, called a records custodian from the clinic to testify that the clinic's records did not include either document, that the clinic had no record of Manning-Wallace receiving treatment after July 29, 2003 (the date of her last appointment for the pre-existing problem), that her name did not appear on the sign-in or sign-out sheets for any of the ten days listed

---

case and perhaps a prosecution for perjury. But the alternative is that the lawyer cooperate in deceiving the court, thereby subverting the truth-finding process which the adversary system is designed to implement."), [10] ("A criminal accused has a right to the assistance of an advocate, a right to testify and a right of confidential communication with counsel. However, an accused should not have a right to assistance of counsel in committing perjury. Furthermore, an advocate has an obligation, not only in professional ethics but under the law as well, to avoid implication in the commission of perjury or other falsification of evidence.").

on the purported account statement, and that the account statement was not a bill from the clinic, although it was similar in form and content. The Initial Evaluation form that Manning-Wallace had offered into evidence appears to be identical to a similar document that she received during her earlier treatment at the clinic, with only the date and diagnosis being changed. The trial jury, not surprisingly, returned a verdict for the defendant.

A grievance was filed with the State Bar in July 2008, and on February 12, 2009, the Bar filed a formal complaint against Manning-Wallace. In her response, which was filed pro se, she denied knowledge that the two clinic documents were fabricated. She also claimed that she could "neither deny nor admit" that she had offered the documents into evidence at trial. She further claimed that she "has been completely candid about all aspects of her person, life, activities, injuries, and the medical care received before and after the car accident."

However, a few months later, in a petition for voluntary discipline seeking a Review Panel reprimand, Manning-Wallace admitted that the two documents were in fact fabricated, that she produced the medical record and medical bill to document her treatment by the therapy clinic, that at the time she used the documents as evidence "she knew or should have known" that the documents were fabricated, and that her conduct violated Rules 3.3 and 3.4. She denied, however, creating the fabricated documents, claiming that she received them from the clinic. The State Bar recommended that the special master approve the petition, which the special master did.

3. The State Bar asserts that numerous mitigating factors are present in this case. The majority opinion does not discuss those factors, but that silence should not be taken as tacit endorsement. Because it will be important for the State Bar to correctly view these factors as this case proceeds (and in other disciplinary cases raising similar issues), I will review each of the purported mitigating factors, as well as several aggravating factors that the State Bar does not mention.

First, the Bar notes that Manning-Wallace had no prior disciplinary history. That is a valid mitigating factor.

Second, the Bar asserts that Manning-Wallace has cooperated with the General Counsel's Office and the Investigative Panel during the investigation of this matter. I would give little weight to this factor, as it is not clear from the record what cooperation, if any, has been requested. What is clear is that in her pro se response to the formal complaint, Manning-Wallace denied that the two clinic documents were fabricated and claimed that she could not admit or deny that she had offered the documents into evidence at trial. In other words, rather than coming clean at the outset of this disciplinary

action, Manning-Wallace appears to have made additional false statements to the State Bar. That is an odd sort of "cooperation" to credit.

Third, the Bar states that Manning-Wallace is "relatively inexperienced in the practice of law, having been admitted in 2001." But unlike some disciplinary violations, which involve technical rules or reflect inexperience in managing a busy or complicated law practice, the duty not to knowingly submit false evidence to a court should be understood by every citizen, and it certainly must be understood by every lawyer, however new to the Bar.

Fourth, stating that "[d]elay in disciplinary proceedings can also be a mitigating factor," the Bar notes that Manning-Wallace first produced the fabricated documents in August 2005 and the trial occurred in June 2006, while the grievance was not filed until July 2008. Thus, the relevant delay, between the revelation at trial that the documents were falsified and the start of the disciplinary proceeding, was about two years. That does not seem excessive, at least compared to other disciplinary proceedings in which the Bar has not suggested this factor as mitigating, and particularly because neither Manning-Wallace nor the Bar identifies any prejudice to her resulting from the delay.

Moreover, the record does not reflect who is responsible for the delay, and, without more information, I would hold any delay against Manning-Wallace, who was aware that the documents she had submitted were fabricated no later than the trial in June 2006 yet appears to have done nothing about it. Indeed, although the State Bar and the majority do not mention this point, I think Rule 3.3 requires us to hold strongly against Manning-Wallace the fact that there is no indication that she acknowledged at trial that the clinic documents she had submitted were fabricated, even after the testimony of the clinic's records custodian, or that she took any other remedial action. See Rule 3.3 (a) (4) ("If a lawyer has offered material evidence and comes to know of its falsity, the lawyer shall take reasonable remedial measures.").

The State Bar also notes that Manning-Wallace's misconduct "was not directed at a client or in her professional capacity." I suppose one could say it is better that Manning-Wallace only harmed her adversary, the justice system, and the legal profession, and did not also harm a client. However, I consider it an aggravating factor that Manning-Wallace did not submit the fabricated documents in a misguided effort to help someone else (a client), but rather with the intent to profit directly because she was the plaintiff in the lawsuit.

Finally, the State Bar offers in mitigation that Manning-Wallace ultimately "did not profit from this series of events and the public was not harmed." The reason that she did not profit, however, was

that her deception was discovered and exposed by her adversary; she certainly *tried* and *intended* to profit very personally and directly from her misconduct. Manning-Wallace's misconduct also required her opposing party, the insurance company, the therapy clinic, and the trial court to expend time and resources responding to the false documents she submitted.

More fundamentally, to say that "the public was not harmed" when a lawyer (or anyone else) knowingly presented false evidence during a trial cannot be squared with the truth-seeking function that is the heart of the public's justice system. It is remarkable that the State Bar, which has as a principal function the protection of the public from the misconduct of its members, would assert otherwise.

Thus, other than Manning-Wallace's previously clean record, I see no meaningful mitigating factors in the current record, and several aggravating factors that the State Bar has not weighed. It is also worth noting that there is no indication that Manning-Wallace's misconduct was related to the type of problems that this Court and the State Bar often deem mitigating of otherwise egregious violations, such as substance abuse, mental or physical disabilities, or other major problems in the lawyer's personal life or practice.

4. What really appears to be driving the State Bar's view that a mere Review Panel reprimand is appropriate discipline is its conclusion that,

> [w]hile there is a host of circumstantial evidence suggesting that [Manning-Wallace] might be responsible for what occurred, the State Bar of Georgia is unable to find direct evidence regarding how the documents were created. The Bar has the burden of proving by clear and convincing evidence that [Manning-Wallace] has engaged in misconduct.

The majority again does not mention this issue. I believe it is worthy of examination.

First, the State Bar confuses the posture of this disciplinary matter. The case is before us pursuant to a petition for voluntary discipline, which requires the attorney to *admit* facts and conduct sufficient to constitute the violation of a disciplinary rule. See Rule 4-227 (a). If the State Bar does not believe that the petition and the record establish a violation of Rules 3.3 and 3.4 by clear and convincing evidence, the appropriate response is to recommend that we reject the petition *on that ground*, not agree to a lesser sanction.

Second, the State Bar acts as though a violation of Rule 3.3 (a) (4) requires proof that the lawyer "created" the falsified evidence. Instead, Rule 3.3 (a) (4) plainly and rightly prohibits a lawyer from

knowingly *offering* false evidence to a court, regardless of who created it. Disciplinary proceedings are primarily focused on protecting the public from unprofessional conduct, but they are also focused on maintaining the public's confidence in the legal profession. See *In the Matter of Skandalakis*, 279 Ga. 865, 866 (621 SE2d 750) (2005). Attorneys who knowingly offer false evidence in a court of law have engaged not only in the worst kind of professional misconduct but also in conduct that severely undermines the public's confidence in our profession. It diminishes the protection offered to the public and the profession by Rule 3.3 (a) (4) to suggest the requirement that an attorney also create the false document before serious discipline may be imposed. Evidence that a lawyer manufactured false evidence may often be an aggravating factor, but as discussed below, indications that the lawyer conspired with someone else, or procured an unwitting associate, in her scheme to deceive the court should also make matters worse.

Third, even assuming that a deficit of clear and convincing evidence would be a reason to accept a reduced sanction rather than reject a petition for voluntary discipline, the State Bar's statement appears to reflect a view that circumstantial evidence is insufficient to carry that burden of proof. That is simply not the case. See, e.g., *Westmoreland v. Tallent*, 274 Ga. 172, 175 (549 SE2d 113) (2001) (explaining, where statute required clear and convincing evidence to overcome statutory presumption against revocation of a will, "[t]he presumption of revocation may be rebutted by circumstantial as well as direct evidence"); *In the Interest of E. P. N.*, 193 Ga. App. 742, 748 (388 SE2d 903) (1989) ("This record is replete with circumstantial evidence which clearly and convincingly establishes" parental unfitness). Indeed, this Court routinely upholds murder convictions under the much higher beyond a reasonable doubt standard of proof based upon circumstantial evidence, where that evidence excludes "every other reasonable hypothesis save that of the guilt of the accused," OCGA § 24-4-6. See, e.g., *Krause v. State*, 286 Ga. 745 (691 SE2d 211) (2010); *Julius v. State*, 286 Ga. 413, 414-415 (687 SE2d 828) (2010).

In my view, the circumstantial evidence in the current record clearly and convincingly establishes that Manning-Wallace knew the two documents she presented in discovery and in evidence at trial were falsified, which warrants the imposition of serious discipline regardless of whether she created the documents herself. This is not the typical situation where a lawyer has no personal knowledge of the facts at issue and has to accept documents provided by a client or someone else at face value. Manning-Wallace *herself* was the patient who supposedly provided the clinic with the detailed information for the "Initial Evaluation" on July 29, 2003, and she supposedly

traveled to the physical therapy clinic for treatment on ten different occasions after the accident — *one day during each of ten different weeks* — between July 29, 2003 and October 14, 2003. According to the record, that evaluation and those ten visits did not happen. Nor is there any indication that Manning-Wallace received such extended treatment somewhere else. (It is therefore inaccurate for the majority to state that "[t]he facts show that Manning-Wallace . . . underwent physical therapy" with respect to the automobile accident. Majority Op. at 223.) Yet she submitted the clinic documents to the insurance company and again at trial as proof of her injuries and medical expenses. What doubt is left that she knew the documents were not genuine at that time? No other "reasonable hypothesis" has been offered by Manning-Wallace or the State Bar.

In addition, although Manning-Wallace claims that she received all of the documents she submitted from the clinic, it is undisputed that the documents are not in the clinic's official records, are not the clinic's actual records (the account statement does not duplicate the appearance of the clinic's actual billing records), and are inconsistent with the clinic's actual records (the sign-in and sign-out sheets for all ten days at issue). Who other than Manning-Wallace, or someone acting on her behalf, would have any reason to create such false documents? Again, no one has suggested a reasonable answer. Manning-Wallace continues to deny fabricating the documents herself, but that only suggests that she involved someone else in her scheme as a knowing or unwitting associate, which in my view would make her misconduct even more egregious.

Manning-Wallace still tries to hedge about her knowledge that the documents were fabricated at the time she offered them as evidence at trial, claiming that she "knew or should have known." But she also admits that her conduct violated Rule 3.3, and the State Bar recommends that (meager) discipline be imposed based upon a violation of that rule. Rule 3.3 (a) (4) requires *actual* knowledge for a violation; to be liable at all, the lawyer must "*knowingly* . . . offer [to the tribunal] evidence that the lawyer *knows* to be false." (Emphasis supplied.) I therefore must assume that Manning-Wallace and the State Bar agree that her misconduct was knowing, which under the circumstances would also make it intentional.

Finally, even assuming that there is a deficit of proof, contrary to the requirement of sufficient proof to impose any discipline, as well as the record, common sense, and the parties' agreement that there has been a violation of Rule 3.3, I believe the State Bar would owe the Court a better explanation for its recommendation before we could accept it. The Bar does not indicate what, if any, investigation has been done to corroborate or discredit the circumstantial evidence or to discover additional direct evidence. There is no indication that it

did such basic investigation as obtaining Manning-Wallace's calendars or other records to see if they showed visits to the clinic on the dates in question, interviewing anyone at the clinic about her treatment or its record-keeping, or asking her to detail how and when she came into possession of the documents and how and when she realized they were fabricated. If Manning-Wallace is truly cooperating with the disciplinary authorities, such inquiries should be quick and simple.

5. The last issue I will address is the precedent cited by the State Bar in support of its recommendation, which are also the only cases cited by the majority. See Majority Op. at 223. In the only case cited in which the penalty was a reprimand, the document was fabricated to deceive a client and was not submitted to a court or the opposing party. See *In the Matter of Rowan*, State Disciplinary Board Docket No. 4194 (no longer confidential due to subsequent disciplinary proceedings). In another case where the falsified document was submitted only to the client, not to the opposing party or the court, the punishment was a 30-day suspension. See *In the Matter of Bagley*, 267 Ga. 311 (477 SEd 834) (1996). In the final case cited, involving intentional rather than negligent submission of a fabricated document to a court, the punishment was disbarment. See *In the Matter of Dogan*, 282 Ga. 783 (653 SE2d 690) (2007) (involving a lawyer who falsified paycheck stubs to benefit himself in a child support proceeding, stating that "disbarment is the appropriate sanction where a lawyer, with the intent to deceive and to harm another party, falsifies documents and relies upon those documents in a court proceeding").

In the many additional disciplinary matters I have found involving violations of the duty of candor to tribunals, the punishment has often been disbarment and almost never less than a suspension. See *In the Matter of Wilkinson*, 284 Ga. 548 (668 SE2d 707) (2008) (public reprimand and one-month suspension for lawyer who negligently made and allowed his law partner to make false statements in Superior Court and the Court of Appeals); *In the Matter of Harrison*, 284 Ga. 442 (668 SE2d 254) (2008) (disbarment based upon two cases in which lawyer submitted falsified asylum applications and affidavits and advised her clients to commit perjury in immigration proceedings); *In the Matter of Morales*, 282 Ga. 471 (651 SE2d 84) (2007) (indefinite suspension of at least one year, with reinstatement conditions, for knowingly drafting pleadings that falsely claimed a conspiracy by Court of Appeals judges and another violation); *In the Matter of Johnson*, 281 Ga. 674 (641 SE2d 535) (2007) (public reprimand where assistant public defender failed to take remedial measures after learning that a client had testified falsely, along with 30-day suspension for other violations); *In the Matter of Shehane*,

276 Ga. 168 (575 SE2d 503) (2003) (disbarment, after previous rejection of petition for voluntary suspension, for conduct including false statements to clients and false statements and submission of false documents to the Investigative Panel); *In the Matter of Friedman*, 270 Ga. 5 (505 SE2d 727) (1998) (disbarment for lawyer who submitted false attorney fee affidavit to bankruptcy court, "reiterat[ing] that this Court has little tolerance for a lawyer who lies during disciplinary proceedings or engages in conduct involving dishonesty, fraud, deceit or misrepresentation").

I read this precedent not as supporting a Review Panel reprimand on the serious facts of this case, but rather as requiring *at least* a meaningful suspension.

6. We are considering this matter on a petition for voluntary discipline, with a limited record. There has been limited investigation, no hearing, and no testimony taken or credibility determinations made by the special master. I believe that this Court owes significant deference to the disciplinary recommendations of the special master and the General Counsel, but the reasons for such deference are less compelling in this setting. The length of this opinion should also demonstrate that I have not disregarded the State Bar's position without careful consideration.

I also acknowledge that I could be wrong in some respects. Perhaps the State Bar has done a more thorough investigation than it appears. Perhaps I have overlooked some other reasonable hypothesis for how the two documents came to be fabricated, provided to Manning-Wallace, and offered by her in discovery and at trial without her realizing she did not get evaluated or treated over the course of ten weeks as they indicate. Perhaps there are other, as yet unstated, factors that would truly mitigate her conduct. If so, however, the record does not reflect that information. I for one will expect that these issues will be adequately addressed by Manning-Wallace and the State Bar if this case returns to our Court in the future.

The attorney disciplinary process must protect the public from attorney misconduct and promote public confidence in the legal profession. See *Skandalakis*, 279 Ga. at 866. Those purposes are not advanced by the proposal, recommended by the State Bar in this case, that nothing more than a quiet reprimand is the appropriate discipline for a lawyer who, based on her admissions and the current record, knowingly submitted two fabricated documents to her opposing party in discovery and again as evidence in a jury trial, in an effort to obtain a damages award for herself. For all of these reasons, I agree that Nerrylle Manning-Wallace's petition for voluntary discipline must be rejected.

DECIDED MAY 17, 2010.

*Paula J. Frederick, General Counsel State Bar,* for State Bar of Georgia.

