**FIRST DIVISION**
**DOYLE, C. J.,**
**PHIPPS, P. J, and MERCIER, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**March 4, 2016**

# In the Court of Appeals of Georgia

A15A2337. MAYS v. THE STATE.                                    DO-088 C

DOYLE, Chief Judge.

Terry Jones Mays appeals the trial court's order denying in part her motion to suppress inculpatory statements she made to a Georgia Bureau of Investigation ("GBI") agent without receiving warnings pursuant to *Miranda v. Arizona*,[1] as applied by *Howes v. Fields*,[2] during an allegedly custodial interrogation. The trial court denied in part the motion to suppress on the ground that Mays was not in custody at the time she made the inculpatory statements so the GBI agent was not

---

[1] 384 U.S. 436 (86 SCt 1602, 16 LEd2 694) (1966)

[2] __ U. S. ___ (132 SCt 1181, 182 LEd2 17) (2012).

required to give a *Miranda* warning.[3] On appeal, Mays contends that the trial court erred by so finding. For the reasons that follow, we vacate in part the order denying in part the motion to suppress and remand for further proceedings.

> When the facts material to a motion to suppress are disputed, it generally is for the trial judge to resolve those disputes and determine the material facts. This principle is a settled one, and [the Supreme] Court has identified three corollaries of the principle, which limit the scope of review in appeals from a grant or denial of a motion to suppress in which the trial court has made express findings of disputed facts. First, an appellate court generally must accept those findings unless they are clearly erroneous. Second, an appellate court must construe the evidentiary record in the light most favorable to the factual findings and judgment of the trial court. And third, an appellate court generally must limit its consideration of the disputed facts to those expressly found by the trial court.[4]

---

[3] After granting in part and denying in part Mays's motion to suppress, the trial court issued a certificate of immediate review, and this Court granted Mays's application for interlocutory appeal.

[4] (Footnotes and citations omitted.) *Hughes v. State*, 296 Ga. 744, 746 (1) (770 SE2d 636) (2015), citing *Brown v. State*, 293 Ga. 787, 803 (3) (b) (2) (750 SE2d 148) (2013). See also *State v. Chulpayev*, 296 Ga. 764, 772 n.5 (770 SE2d 808) (2015) (applying the standard of review enunciated in *Hughes*, 296 Ga. at 746 (1), and *Brown*, 293 Ga. at 803 (3) (b) (2) to a motion to suppress statements pursuant to *Miranda*).

In some cases, some or all of the material facts may be undisputed, as where the defendant concedes a fact unhelpful to his cause in his motion to suppress, where the State admits a fact unhelpful to its case in connection with the motion, or where the State and defendant expressly stipulate to a fact. In such cases, an appellate court properly may take notice of the undisputed facts — even if the trial court did not — without interfering with the prerogative of the trial court to resolve disputes of material fact.[5]

So viewed, the record shows that Mays was on probation for reckless driving and a moving violation, and her terms of probation included a requirement that she complete 100 hours of community service by December 7, 2013. On December 4, 2013, however, Mays tested positive for alcohol during a screen and admitted to consuming alcohol, which resulted in her confinement on December 6, 2013, for violation of the terms of her probation. That same day, the State filed a petition to revoke Mays's probation on the grounds that, among other violations, (1) she failed alcohol screens on three occasions and (2) she failed to complete 100 hours of community service by the required date.

---

[5] *Hughes*, 296 Ga. at 746 n.4. See also *Mack v. State*, 296 Ga. 239, 241-242 (765 SE2d 896) (2014).

Prior to being taken into custody, Mays had submitted a letter to probation services from Marietta Chapel African Methodist Episcopal Church, signed by Reverend Joseph Comeaux and dated November 30, 2013, stating that Mays had completed 41 hours of community service at his organization. While Mays was in jail, on December 10, 2013, Marietta City Councilman Anthony Coleman provided to the municipal court for Mays's revocation hearing a packet of documents containing a second letter from Reverend Comeaux, post-dated December 15, 2013, claiming therein that Mays had completed 59 hours of community service. Also on December 10, 2013, Reverend Comeaux delivered in person to probation services a third letter, which was not on church letterhead and which purported to "document [his earlier] telephone conversation" during which he claimed that Mays had completed 100 hours of community service at his church.

Probation services found suspicious the composition and timing of these letters, which lead the Marietta Police Department to open an investigation into Coleman's involvement in any false report of Mays's community service. Because the councilman was involved, the police department contacted the GBI to conduct the investigation. Thereafter, on December 13, 2013, while Mays was in jail awaiting her revocation hearing, GBI agent Jan Roulain interviewed her.

Following the investigation, on August 14, 2014, Mays and Coleman were indicted in the underlying case for one count of violating the Racketeer Influenced and Corrupt Organizations Act[6] and three counts of making false statements[7] in relation to the letters. Mays filed a motion to suppress the statements she made to Roulain, arguing that Roulain's interview constituted a custodial interrogation requiring *Miranda* warnings prior to questioning.

At the hearing on the motion to suppress, the State submitted into evidence an audio recording of Roulain's interview of Mays, and Mays submitted a transcript of the interview. Both the audio and transcript show that Roulain began the interview stating,

> Okay, today's date is . . . Friday, December 13. The time is 3:23[, and] I'm interviewing Terry Mays at the [jail], . . . I'm talking to her about her th' you you've been umm I don't want to talk about your crime about what why you're here now umm so just so you understand that [okay. W]e don't want to talk about that[,] I just want to talk about community service. Did you have to do community service as part of your original . . . ."

---

[6] OCGA § 16-14-4 (b).

[7] OCGA § 16-10-20.

MAYS: probation.

Roulain provided no *Miranda* warnings, and she did not state to Roulain that she was free to leave or to decline to answer the questions until over half-way through the interview. The questions dealt largely with Mays's community service probation requirement, whether there was a required date by which she had to complete the requirement, and when Mays had completed the requirement. Many of Mays's answers were non-responsive or dealt with ancillary personal matters, including her divorce, bankruptcy, and home foreclosure, and she declined to discuss the individual who had recommended that she complete her community service at the church.

At the motion to suppress hearing, Roulain testified that while she could not recall she believed Mays was not handcuffed or shackled during the interview, though Mays was escorted to the room by officers; Roulain was unaware whether the door behind Mays was locked, but she recalled that the room was not overly dark.

The trial court found that Roulain interviewed Mays for about 23 minutes and did not *Mirandize* Mays prior to the interview, which was conducted in a "fairly well-lit" interview room about eight to ten feet square divided by a plexiglass window. The room normally was reserved for attorney-client interactions. Officers escorted Mays to and from the room and closed her into the room when they left her with Roulain.

6

In its order, the court found that the circumstances surrounding the questioning did not rise to the level to constitute "in custody" for purposes of the *Miranda* analysis because (1) the interrogation was brief; (2) "the room, while not luxurious . . . , did not exert coercive pressure"; (3) the tone between the two was conversational; (4) Roulain did not threaten or raise her voice at Mays; (5) Roulain told Mays she was free to leave the interrogation; (6) Mays ended the questioning herself; and (7) Mays refused to answer when questioned about the identity of the person who recommended the church for performance of her community service, demonstrating that she knew she could refuse to answer. Thus, the trial court denied in part the motion to suppress with regard to the initial portion of the statement; however, the court did find that Mays had invoked her right to an attorney midway through the interview, and thus, granted the motion with regard to that portion of the interview that took place after the invocation

In a single enumeration of error, Mays argues the trial court erred by finding that the statements she made to Roulain about the community service letters and her purported completion of the hours while she was in jail on the probation revocation

7

charge were made during a custodial interrogation subject to the *Miranda*-warning

requirement as applied in *Howes v. Field*.[8]

> A person is considered to be in custody and Miranda warnings are required when a person is (1) formally arrested or (2) restrained to the degree associated with a formal arrest. Unless a reasonable person in the suspect's situation would perceive that [s]he was in custody, *Miranda* warnings are not necessary. Thus, the [relevant] inquiry is how a reasonable person in [Mays's] position would perceive h[er] situation.[9]

There is no bright-line rule, however, that after a defendant has been remanded

to jail or prison that she is always in custody for purposes of *Miranda*.[10] The question

---

[8] It is not clear from the record whether Mays had invoked her right to counsel as to the petition for probation revocation, but it is unnecessary for our analysis in this instance because we conclude that Mays was subjected to a custodial interrogation. See, e.g., *Mack*, 296 Ga. at 245-246 (2) (b). Tellingly, near the end of the interview, Roulain asks Mays, "[y]ou were just arrested for the drinking violation[,] is that correct?" To which question Mays responds, apparently thinking that Roulain was referring to her conviction and not the probation violation, "[i]t was reduced to reckless driving." Roulain then states, "okay, alright, okay so it didn't have anything . . . it is my understanding it didn't have anything to do with your community service otherwise I wouldn't be asking you about it without reading you your rights because I don't want to violate any of your rights and you're free to get up and walk out at any given time . . . ."

[9] (Citations omitted.) *State v. Folsom*, 285 Ga. 11, 12-13 (1) (673 SE2d 210) (2009).

[10] See *Howes*, __ U. S. at __ (II) (132 SCt at 1188-1189).

8

is whether the "circumstances [of the interview] are thought generally to present a serious danger of coercion."[11]

> In determining whether a person is in custody in this sense, the initial step is to ascertain whether, in light of the objective circumstances of the interrogation, a reasonable person would have felt he or she was not at liberty to terminate the interrogation and leave. And in order to determine how a suspect would have gauged his freedom of movement, courts must examine all of the circumstances surrounding the interrogation. Relevant factors include the location of the questioning, statements made during the interview, the presence or absence of physical restraints during the questioning, . . . the release of the interviewee at the end of the questioning, and whether the relevant environment presents the same inherently coercive pressures as the type of station house questioning at issue in *Miranda*.[12]

Here, the trial court found that the questioning was brief and non-threatening, took place during the afternoon at approximately 3:00 p.m., in a room that was not overly confining in which Roulain was separated from Mays by a glass partition. We agree with the trial court that these factors militate in favor of finding that Mays was not in custody. Nevertheless, taking the whole circumstances of the encounter into

---

[11] Id. at __ (III) (A) (132 SCt at 1189).

[12] (Citations and punctuation omitted.) Id. at __ (III) (A) (132 SCt at 1189-1190).

9

account, the subject of the questions and environment "present[ed] the same inherently coercive pressures as the type of station house questioning at issue in *Miranda*," and thus, the trial court erred by concluding that Mays was not in custody and by failing to suppress Mays's entire statement.[13]

Here, Mays had been in jail for one week after violating terms of her probation, including her failure to complete community service, which was the main focus of Roulain's questions, and Mays was scheduled to appear before the court on the matter less than one week after the questioning. As the U. S. Supreme Court explained in *Howes*,

> [i]n the paradigmatic *Miranda* situation — a person is arrested in h[er] home or on the street and whisked to a police station for questioning — detention represents a sharp and ominous change, and the shock may give rise to coercive pressures. A person who is cut off from his normal life and companions, and abruptly transported from the street into a police-dominated atmosphere, may feel coerced into answering questions.[14]

---

[13] Id. at __ (III) (A) (132 SCt at 1190).

[14] (Citations and punctuation omitted.) Id.

10

Mays was not serving a term in prison, and therefore, it was not her normal living situation. Although the encounter with Roulain was brief, and it is not clear whether Mays was shackled, handcuffed, or restrained, Roulain failed to tell Mays she was free to leave until over 15 minutes of the 23-minute questioning. "Unambiguously advising a defendant that [s]he is free to leave and is not in custody is a powerful factor in the" determination of custody for *Miranda* purposes.[15]

In *Howes*, the Supreme Court explained that compared to a prisoner sentenced to a term of years, "a person [who] is arrested and taken to a station house [and] questioned may be pressured to speak by the hope that, after doing so, he will be allowed to leave and go home."[16] Mays's situation is similar to that of an arrestee — she had not been sentenced and was awaiting a hearing on the State's petition to revoke her probation, and therefore, the risk of coercive pressure was greater than that of a prisoner. The State's attempt to distinguish the questioning on the basis that Roulain was investigating a falsified report of community service hours rather than a failure to complete community service hours does not remove the coercion a reasonable person in Mays's situation would have felt being questioned about the

---

[15] *United State v. Brown*, 441 F3d 1330, 1347 (II) (A) (11th Cir. 2006).

[16] *Howes*, __ at (III) (A) (132 SCt at 1191).

11

matter related to the State's pending petition to revoke her probation so near her hearing date.[17]

Finally, the trial court's findings (1) that Mays ended the questioning herself and (2) that she declined to answer a question about another person's identity do not support its conclusion that she was not in custody because the standard is not a subjective one. As the Georgia Supreme Court has explained, "the subjective views of the interrogator and suspect are not dispositive of whether a person is in custody for the purposes of *Miranda* warnings. . . . The relevant inquiry is how a reasonable person in the suspect's position would perceive his situation."[18] Based on the factors outlined above, a reasonable person in Mays's situation would not have perceived that she was free to leave.

---

[17] See id.; See also *Folsom*, 285 Ga. at 13 (1) ("whether the police had probable cause to arrest and whether the defendant was the focus of the investigation are [also] irrelevant considerations for *Miranda* purposes").

[18] (Citations and punctuation omitted.) *Folsom*, 285 Ga. at 12-13 (1) ("Unless a reasonable person in the suspect's situation would perceive that he was in custody, *Miranda* warnings are not necessary. Thus, the relative inquiry is how a reasonable person in [the defendant's] position would perceive his situation.") (citation omitted).

Accordingly, to the extent that the trial court denied Mays's motion to suppress her full statement to Roulain on the basis that she was not in custody, the order is vacated and case remanded for entry of an order consistent with this opinion.

*Judgment vacated in part and case remanded. Phipps, P. J., and Mercier, J., concur.*