NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: April 16, 2024

S24Y0285. IN THE MATTER OF PAUL JASON YORK.

PER CURIAM.

This disciplinary matter is before the Court on the report and recommendation of Special Master Michael J. Blakely, who recommends that the Court accept the petition for voluntary discipline filed by Respondent Paul Jason York (State Bar No. 929158) after the filing of a formal complaint, see Bar Rule 4-227 (c), and impose a three-year suspension with conditions, nunc pro tunc to May 1, 2020. In his petition, York, a member of the State Bar of Georgia since 2014, admitted to violating Rules 1.7 (a), 3.3 (a), 4.1, and 8.4 (a) (4) of the Georgia Rules of Professional Conduct ("GRPC"), found in Bar Rule 4-102 (d). The maximum sanction for a single violation of any of these Rules is disbarment. Neither York nor the Bar filed exceptions in this Court to the Special Master's

report and recommendation. For the reasons discussed below, we reject York's petition for voluntary discipline.

After the Bar filed a formal complaint, York filed a petition for voluntary discipline admitting the allegations against him. A disciplinary hearing was held on June 16, 2023. In his report, the Special Master recounted that York admitted the following facts. In early 2020, York represented a client who was arrested and charged with misdemeanor family violence against her husband. She was released on bond on the condition that she not contact her husband, but she was arrested a second time based on an allegation that she had violated the no-contact condition. Thereafter, she was again released on bond with the added conditions that she wear an electronic monitoring device on her ankle and pay a monthly monitoring fee of $347.52.

York forged the signatures of a judge and an assistant district attorney on a court order dated March 4, 2020 that purportedly authorized the removal of the monitoring device from the client's ankle. As a result, he was charged with felony forgery, and he

entered into a 36-month Pretrial Diversion Agreement ("PDA") with the district attorney's office pursuant to OCGA § 15-18-80,[1] requiring him, for the duration of the PDA, to (1) refrain from drug and alcohol use; (2) submit to random drug tests; (3) continue counseling with a psychologist until released; (4) continue counseling with a substance abuse counselor until released; (5) attend at least one weekly drug/alcohol support group meeting; (6) attend monthly legal mentoring sessions; (7) follow the Bar's recommendations; and (8) "not practice law until reinstated by the State Bar of Georgia."[2] The district attorney agreed to dismiss the criminal charges upon York's completion of the conditions, but if York failed to meet those conditions, he could face prosecution.[3]

---

[1] A PDA provides "an alternative to prosecuting offenders in the criminal justice system." OCGA §15-18-80 (b). The Special Master observed that, as a result of the PDA, the trial court has not entered judgment against or imposed a criminal sentence on York.

[2] The Special Master found that York voluntarily stopped practicing law in May 2020, about two months after he committed the forgery.

[3] The transcript of the disciplinary hearing before the Special Master reflects that York testified that he entered into the PDA on August 8, 2022, and he believes that it will remain in effect until at least August 8, 2025.

The Special Master observed that York committed the misconduct at issue here in response to pressure from the client, her family and friends, and members of her church to procure the removal of the monitoring device because the monthly fee caused the client financial hardship. Moreover, York suffered from serious substance abuse and psychological problems at the time he committed the misconduct. However, York presented evidence that he sought and received care from a psychologist, who evaluated him in December 2020 and conducted a follow-up evaluation in September 2021; successfully completed an intensive outpatient program; and began to attend weekly counseling sessions with a substance abuse counselor. The psychologist opined at the disciplinary hearing that York's judgment and mental and emotional functioning had been impaired by his drug addiction, clinical depression, and anxiety, which caused or contributed to his acts of forgery, but as a result of treatment, York was in a state of recovery and could safely practice law. The Special Master also observed that evidence was presented that York is mentored by a

4

state court judge, who believes that York is ready to resume his legal career.

The Special Master concluded that York's admissions in his petition were sufficient to establish violations of Rules 1.7 (a),[4] 3.3 (a),[5] 4.1,[6] and 8.4 (a) (4).[7] The Special Master then considered the ABA Standards for Imposing Lawyer Sanctions ("ABA Standards"), which include (1) the duty violated; (2) the lawyer's mental state; (3) the actual or potential injury caused by the misconduct; and (4) aggravating or mitigating factors. See *In the Matter of Morse*, 266 Ga. 652, 653 (470 SE2d 232) (1996). The Special Master observed that York violated his duty to the legal system by engaging in

---

[4] Rule 1.7 (a) provides that "[a] lawyer shall not represent or continue to represent a client if there is a significant risk that the lawyer's own interests or the lawyer's duties to another client, a former client, or a third person will materially and adversely affect the representation of the client[.]"

[5] Rule 3.3 (a) provides in relevant part that "[a] lawyer shall not knowingly: (1) make a false statement of material fact or law to a tribunal[.]"

[6] Rule 4.1 (a) provides that "[i]n the course of representing a client a lawyer shall not knowingly: make a false statement of material fact or law to a third person[.]"

[7] Rule 8.4 (a) (4) provides that it is a violation of the GRPC for a lawyer to "engage in professional conduct involving dishonesty, fraud, deceit or misrepresentation."

5

deceptive conduct (i.e., forgery) during legal proceedings, see ABA Standard 6.0; that he did so intentionally; and that his misconduct caused actual injury to the legal system, the judge, and the assistant district attorney, and potential harm to the client's criminal case, though it did not appear that the unapproved removal of the monitoring device caused the client's case any actual harm. The presumptive sanction for this type of misconduct is disbarment. See ABA Standard 6.11 (disbarment appropriate when lawyer, with intent to deceive a court, makes false statements or submits false document and causes serious injury).

In aggravation, the Special Master found that the forgery was dishonest, but noted that York sought no economic benefit for himself, see ABA Standard 9.22 (b); that he admitted to multiple violations of the Rules, see ABA Standard 9.22 (d); that he had substantial experience in the practice of law, see ABA Standard 9.22 (i), because he had been practicing for six years at the time of the misconduct; and that he had committed illegal conduct, see ABA Standard 9.22 (k).

6

In mitigation, the Special Master found the absence of a prior disciplinary record, see ABA Standard 9.32 (a); full and free disclosure to the disciplinary board or a cooperative attitude toward proceedings, see ABA Standard 9.32 (e); evidence of good character and reputation in the form of letters attesting to York's provision of pro bono legal assistance in his community, see ABA Standard 9.32 (g); imposition of other penalties or sanctions due to York's criminal charges, see ABA Standard 9.32 (k)[8]; and remorse, see ABA Standard 9.32 (l). The Special Master also gave significant mitigating weight to York's personal or emotional problems, see ABA Standard 9.32 (c), because a psychologist had diagnosed him with ADHD and observed that "cognitive impairment (related to drug use, depression, anxiety, and burn out) played a major part in his poor judgment" leading to his misconduct. Finally, the Special

---

[8] We disagree with the Special Master's application of ABA Standard 9.32 (k) because we have held that the imposition of a criminal penalty relating to the same conduct at issue in a disciplinary matter should not be viewed as a mitigating factor. See *In the Matter of Levin*, 289 Ga. 170, 175 (709 SE2d 808) (2011), citing *In the Matter of Ortman*, 289 Ga. 130, 131-132 (709 SE2d 784) (2011) (Nahmias, J., concurring).

7

Master gave significant weight to the mitigating factor of "mental disability or substance abuse problem," see ABA Standard 9.32 (i),[9] because although York suffered from drug abuse and psychological problems at the time of his misconduct, he had shown significant evidence of recovery. Specifically, the Special Master recited that in his 2020 evaluation, the psychologist found that at the time of his misconduct, York was abusing his ADHD medications and methamphetamine, which "likely caused him to be adept at dishonesty, shading the truth and covering up mistakes and wrongdoing." However, in his 2021 evaluation, the psychologist noted that York "has been very involved in a milieu of treatments to

---

[9] ABA Standard 9.32 (i) provides that an attorney's "mental disability or chemical dependency including alcoholism or drug abuse" can be considered mitigating when

> (1) there is medical evidence that the respondent is affected by a chemical dependency or mental disability;
>
> (2) the chemical dependency or mental disability caused the misconduct;
>
> (3) the respondent's recovery from the chemical dependency or mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation; and
>
> (4) the recovery arrested the misconduct and recurrence of that misconduct is unlikely.

improve his health and functioning"; that his mood and cognitive functioning had improved; that he had not relapsed; and that his "drug/alcohol problems are in remission."

The Special Master observed that in Georgia, an attorney's submission of fabricated documents is a serious offense that may justify disbarment. Cf. *In the Matter of Manning-Wallace*, 287 Ga. 223, 224 (695 SE2d 237) (2010) (Nahmias, J. concurring). However, mitigating factors may support a suspension even where the offense would justify disbarment, such as an attorney's demonstration of a sustained recovery from the substance abuse that led to his misconduct. See *In the Matter of Adams*, 291 Ga. 173 (729 SE2d 313) (2012) (accepting petition for voluntary discipline and imposing public reprimand, on special master's recommendation, for attorney who violated numerous provisions of the GRPC, but showed that his misconduct was caused in part by substance abuse, from which he had undergone significant rehabilitation and was maintaining his recovery); *In the Matter of Jaconetti*, 291 Ga. 772 (732 SE2d 447) (2012) (attorney's misconduct was mitigated by the fact that it was

9

likely attributable to his mental illness and severe emotional distress; three-year suspension for multiple violations, including Rule 8.4 (a) (4)). The Special Master noted that York had demonstrated significant mitigating factors, and he had taken concrete steps to overcome his substance abuse problem and address his psychological issues, resulting in improved cognitive functioning and a "remission" of his addiction.

To be sure, the Special Master acknowledged that in *Manning-Wallace*, this Court rejected an attorney's petition for voluntary discipline requesting a Review Panel reprimand when the attorney offered fabricated insurance documents into evidence in a case on her own behalf, rather than on behalf of a client; moreover, she initially denied that the documents had been fabricated or that she had offered them into evidence. Id. at 224. See also *In the Matter of Dogan*, 282 Ga. 783 (653 SE2d 690) (2007) (disbarring attorney who produced fabricated pay stubs in child support case against him, with the intent to deceive the other party; no mitigating factors). But the Special Master attempted to distinguish the facts of this case by

10

noting that York submitted the forged order on behalf of his client, not himself; he did not attempt to mislead the Bar or the Special Master; he admitted to the factual allegations and Rule violations; and there were significant mitigating factors. The Special Master opined that although York forged the signatures with the intent to deceive, his only possible selfish motivation would have been to relieve himself of the pressure from his client and her supporters. The Special Master stated that in forging the signatures, York was not seeking financial gain; he was not consciously seeking to harm anyone; and he acknowledged the harmful nature of his conduct.

The Special Master thus recommended that the Court accept York's petition and impose a three-year suspension with the following conditions during the suspension: (1) compliance with the terms of the PDA; (2) attending counseling with the psychologist and with the substance abuse counselor, weekly support group meetings, and monthly legal mentoring meetings; and (3) as preconditions to reinstatement, (a) obtaining a certification from a medical doctor or psychologist that he is fit to practice law and that his emotional and

11

substance abuse problems have been addressed, (b) providing proof that he is in compliance with the PDA, and (c) providing proof that he complied with his obligations to attend counseling and support meetings pursuant to the second condition. Moreover, the Special Master noted that if York is convicted of a crime arising from the same facts as this disciplinary matter, the Bar may seek all disciplinary sanctions authorized by the Bar Rules, including disbarment. The Special Master concluded that, subject to York's compliance with the conditions for reinstatement, it would be appropriate for the suspension to be imposed nunc pro tunc to May 1, 2020, the date York stopped practicing law, because York provided a letter from his former law partner (who is also his father) regarding his efforts to withdraw from all of his cases by May 2020, and a letter from the clerk of court in the county where he primarily practiced indicating that he had not filed any court documents since May 2020.  See *In the Matter of Onipede*, 288 Ga. 156, 157 (702 SE2d 136) (2010) ("[W]hen an attorney requests [discipline] nunc pro tunc, it is the lawyer's responsibility to demonstrate that [he] voluntarily

stopped practicing law, the date on which [his] law practice ended, and that [he] complied with all the ethical obligations implicated in such a decision, such as assisting clients in securing new counsel and facilitating the transfer of client files and critical information about ongoing cases to new counsel.").

We commend the Special Master for his thorough analysis of the facts and issues in this case. We disagree, however, with the recommendation to accept York's petition while his criminal forgery charges remain pending. Although we recognize that a pretrial diversion agreement is considered an "alternative to prosecution," see OCGA § 15-18-80 (b), the prosecution remains open during the pendency of the PDA, and York has admitted that his PDA will not expire until at least August 8, 2025, see n.3, supra. If we were to accept York's petition, he would be eligible to have his three-year suspension imposed nunc pro tunc to May 1, 2020, the date on which he offered evidence that he stopped practicing law, and he would be eligible for reinstatement because more than three years have passed since that date. But if he were permitted to resume practicing

13

law before the PDA expires, "the public is likely to lose respect for the legal system," just as it would if an attorney were permitted to resume the practice of law while serving criminal probation. *In the Matter of Paine*, 280 Ga. 208, 210 (625 SE2d 768) (2006). The same reasoning applies when felony charges remain pending, albeit under a pretrial diversion agreement.

Moreover, we have previously found it appropriate to impose an interim or emergency suspension on an attorney pending the resolution of his or her felony charges. See, e.g., *In the Matter of Morris*, 298 Ga. 864, 864-865 (785 SE2d 4087) (2016) (granting attorney's voluntary petition for emergency suspension pending the resolution of his disciplinary and criminal matters); *In the Matter of Smith*, 297 Ga. 46, 46 (771 SE2d 901) (2015) (granting attorney's petition for indefinite suspension pending the outcome of felony theft by conversion and forgery charges arising from attorney's representation of civil clients; State Bar observed that attorney's request "strikes a reasonable balance between the need for public protection and [attorney's] right to defend against the criminal

14

charges"); *In the Matter of Galette*, 292 Ga. 341 (737 SE2d 691) (2013) (granting attorney's request for suspension of license pending the resolution of criminal charges, the underlying facts of which were related to a grievance filed with the State Bar by the attorney's client); *In the Matter of Swank*, 288 Ga. 479 (704 SE2d 807) (2011) (granting lawyer's voluntary petition for a suspension pending the resolution of his felony criminal charges). Although York voluntarily ceased practicing law, thereby obviating a need for the Bar to seek an emergency suspension, a similar rationale in protecting the public applies to not permitting York to resume practicing law while the charges remain unresolved.

For these reasons, we conclude that York's proposed discipline is insufficient because it would be inappropriate to impose his requested three-year suspension nunc pro tunc under the circumstances of this case. Accordingly, we reject York's petition for voluntary discipline. See generally *In the Matter of Veach*, 310 Ga. 470, 472 (851 SE2d 590) (2020) (noting Court's practice, when

finding proposed discipline insufficient, of rejecting a petition for voluntary discipline rather than imposing a greater sanction).

*Petition for voluntary discipline rejected. All the Justices concur.*